[No. 3568.   Dec. 13, 1930.]

[On Rehearing March 28, 1931.]

STATE v. GRISSOM.

[298 Pac. 666.]

Reese & Reese and O. O. Askren, all of Roswell, for appellant.

M. A. Otero, Jr., Atty. Gen., and E. C. Warfel, Asst. Atty. Gen. (Quincy D. Adams, Asst. Atty. Gen., on rehearing), for the State.

OPINION OF THE COURT

WATSON, J.

Appellant has been convicted of using an instrument, the name of which was to the grand jurors unknown, in an attempt to produce an abortion, by reason and in consequence of which the woman operated upon died. Laws 1919, c. 4, § 2, 1929 Comp. § 35—310.

Appellant is a dentist but not a physician. He was engaged to perform the operation by the man responsible for the condition of the deceased, for a consideration of $200, represented by the promissory note of the deceased and this man, and secured by the automobile of the deceased. This man witnessed the operation and testified

to it. It took place in appellant's office. Thereupon appellant took deceased to his home, where she remained several days, and from which she was taken to the hospital at the point of death, having in the meantime been delivered of a dead child of seven months' development. Appellant was immediately arrested and confined. It is not deemed necessary to state facts more in detail except in discussing the points relied upon for reversal.

██ Appellant first challenges the constitutionality of the statute under which he was charged and convicted. Laws 1919, c. 4, which reads as follows:

"An Act Declaring Abortion a Felony and Fixing the Penalties for Commission Thereof.

"Be It Enacted by the Legislature of the State of New Mexico:

"Section 1. Any person who shall administer to any pregnant woman any medicine, drug or substance whatever, or attempt by operation or any other method or means to produce an abortion or miscarriage upon such woman, shall be guilty of a felony, and, upon conviction thereof, shall be fined not more than two thousand ($2,000.00) Dollars, nor less than five hundred ($500.00) Dollars, or imprisoned in the penitentiary for a period of not less than one nor more than five years, or by both such fine and imprisonment in the discretion of the court trying the case.

"Sec. 2. Any person committing such act or acts mentioned in section one hereof which shall culminate in the death of the woman shall be deemed guilty of murder in the second degree; Provided, however, an abortion may be produced when two physicians licensed to practice in the State of New Mexico, in consultation, deem it necessary to preserve the life of the woman, or to prevent serious and permanent bodily injury.

"Sec. 3. For the purpose of the act, the term 'pregnancy' is defined as that condition of a woman from the date of conception to the birth of her child."

He relies upon these two propositions: First,

"Chapter 4 of the Session Laws of 1919 is in violation of section 16, article 4 of the New Mexico Constitution in that the subject or subjects of the act are not clearly expressed in the title and the act is therefore void."

Second,

"Section 2 of chapter 4 of the Session Laws of 1919 is in violation of Section 16, article 4 of the New Mexico Constitution in that it defines a crime not germane to the title of the act."

Approaching the question somewhat differently than appellant does, we conclude that this act embraces but one subject. The thing denounced is the attempt, by administering drugs or by operation, to produce an abortion or miscarriage. Every provision of the statute seems to be germane to that subject. If the word "abortion" used in the title clearly expresses that subject, it would seem that the constitutional requirement is satisfied.

Appellant's contentions are based upon the precise meaning of the word as he finds it defined at 1 R. C. L. p. 70:

"The term 'abortion' in law means the expulsion of the foetus at a period of utero-gestation so early that it has not acquired the power of sustaining an independent life."

If the Legislature was and we are limited to that meaning of the word, it is easy to argue the inappropriateness of the title from several standpoints. But we have heretofore laid it down that, if the Legislature has used words "in a special or modified sense * * * different from the accepted sense in which * * * ordinarily used," this court, in comparing the title with the body of the act, will accept the meaning evidently intended. Burch v. Ortiz, 31 N. M. 427, 246 P. 908.

That case goes farther than necessary to go here. Both at common law and by statute in most, if not all, of the states, the word "abortion" describes an offense. It is not the mere expulsion of the foetus. The gist of it is the artificial means employed to procure expulsion. Under the varying statutory provisions, the accomplishment of the desired result, the quickening of the child, or the death of the woman may or may not be elements of the crime. However that may be, "abortion" is a common designation of it. See 1 C. J. "Abortion," § 2 et seq. The use of the word in the present title is not unusual. It carries a meaning well established in jurisprudence.

The "definition" upon which appellant relies reads to the contrary. But, if the context be examined, it will be found that the language quoted is not a definition at all. It merely points out that, while in medical parlance there are distinctions between miscarriage, abortion, and pre-

mature labor, the distinction between the first two has no basis "in law."

■ If we were asked, as an abstract question, whether a murder statute could be enacted under an abortion title, the answer would, of course, be negative. But, considering the matter practically, deeming the offense murder in the second degree is but a device for fixing the punishment. It is none the less "abortion" as the term is frequently employed in jurisprudence. It does not constitute duality of subject. It does not render section 2 ungermane to the title. The purpose of the constitutional provision invoked is not to hamper legislation. It is not to afford a technical ground to defeat justice. It is to prevent certain well-known legislative abuses. It is always liberally construed "to uphold proper legislation, all parts of which are reasonably germane on the one hand, and to prevent trickery on the other." 36 Cyc. p. 1017. This is not an example of the evils aimed at. We are constrained to uphold the act.

■ ■ A black satchel containing full equipment for obstetrical operations and treatments was introduced in evidence, and its introduction and the testimony by physicians as to the uses of the various instruments, drugs, gauzes, etc., is made the subject of contentions of error.

The bag itself and four or five of the instruments are so well identified as having been in possession of the accused at the time of the operation and as having been used by him in performing it that counsel practically admits that their reception was proper. As to the remaining contents, it is not shown that they were used in performing the operation or in treating the patient. It is not so clearly shown, but in our judgment it is satisfactorily shown, that they were in the possession of the accused when he operated and were in the bag from which he took the instruments he then used. As to the satchel and all contents, we are constrained to overrule the contention that they were not sufficiently connected with the accused or with the operation to be admissible.

But appellant contends that, even if so connected, it was error to admit the instruments and drugs not shown

to have been used. He argues that thus to bring home to a dentist the possession of complete obstetrical equipment pictured him before the jury as an abortionist, and amounted to an attempt to convict him of a particular offense on a showing that he had been guilty of, or was prepared to commit, others. This is permissible, he argues, only in circumstances not present here, for instance, where there is an issue as to intent or motive. He also complains that it was erroneous to permit examination of the physicians as to the uses of the various drugs, since he was not charged with administering drugs to produce abortion, but with an operation with instruments.

If there is any merit in these contentions, questions we do not decide, appellant cannot be heard to make them here. Timely objections were not made upon these grounds or theories of exclusion. The objection was stated time and again. Never, except in one instance, was it placed on any ground except the failure to connect the instruments or drugs with the accused and with the operation. The exceptional instance was to the question "what these ampules are and what they are used for." One counsel interposed the stock objection as to lack of connection. It was overruled, and the witness answered:

"This is a fluid extract of ergot. It is a drug that is used hypodermically."

Then another counsel "further" objected:

"There is no allegation in the indictment of any such fluid or substance having been used to procure this alleged abortion."

This was overruled, and the witness completed his answer:

"It is used to stop hemorrhage from the uterus and bring on uterine contractions, mostly. * * * This is for hypodermic use. It is not large enough for the mouth."

Later, when the question was put as to a bottle containing the same drug, the objection above stated was not renewed, and the answer was:

"Fluid extract of ergot. That is used for stopping hemorrhage, or stopping hemorrhage after the birth of children."

So the answers do not seem to contain the anticipated objectionable feature. None of the drugs were described

as capable themselves of producing abortions. They appeared merely such as are used in cases of childbirth and of obstetrical surgery.

So we overrule the contentions as to the satchel and contents.

■ ■ The state adduced evidence that, while the body of the deceased was lying in the mortuary, and while appellant was in jail, it was reported to the sheriff that a diamond ring of the deceased was missing. Appellant was told that he was to be searched for it. He denied that he had it. It was found on his person, and then he explained that he had obtained it from some one else.

This evidence was objected to as being wholly irrelevant, tending to prove no issue in the case, and, if true, to constitute an independent transaction, proof of which would be prejudicial. The special prosecutor announced that the evidence was offered as tending to show motive; it being the state's theory that appellant realized that his note and mortgage, the consideration for his act, had become worthless with his patient's death, and that he took the ring to recoup the loss. While he did not say so directly, there is the inference that appellant took the ring from the woman's finger after her death. Appellant then objected that this theory made it plain that the purpose of the state was to prejudice the jury by proof of an irrelevant separate offense.

With the record in this condition, adjournment was taken for the day. On reconvening the testimony and the remarks of the special prosecutor were stricken, and the jury was directed to disregard them. No point is made of the omission of the state to prove the identity of the ring or of the falsity of appellant's explanation of his possession of it. It is assumed that these essential facts would have been shown had the state been permitted to pursue the matter.

Appellant's contention is that the evidence and the remarks were so calculated to inflame the mind that error in once admitting them is irreparable. The error in admitting the evidence is assumed rather than argued. The

Attorney General, however, contends that it was not error, and correctly argues, that it is not enough to show that the evidence was prejudicial, or that it pointed to another offense, if it tended to prove an issue in the case.

The issues were whether an unlawful operation had been performed upon the deceased culminating in her death, and whether the accused was the person who performed it. No admission of the accused or of his counsel had settled either issue. The trial was upon a plea of not guilty.

It happens in this case that the evidence of appellant's guilt was so strong and complete that there was little need of proving his possession of the ring; and the mind bent upon preserving the rights of accused persons to a fair trial is at first impressed with the unfairness of thus cumulating charges of wrongdoing. Still we know of nothing short of an admission or a plea which does or ought prevent the state from adducing all facts and circumstances tending to show guilt. So long as the accused denies that it was he who committed the crime, he must face the circumstances which the state is able to prove. There was an eyewitness to the operation. It will not be contended that with his testimony in the state was bound to rest. It could still weave its net of circumstances, corroborating him. If there had been no eye witness, and if the chain of circumstances had been weak, no one would have questioned the importance of the discovery that the accused was in possession of a ring which the deceased had recently owned, or of the fact that he denied such possession and falsely explained it when he could no longer deny it. It seems plain that the evidence tended to connect appellant with the deceased immediately before or after her death, and that his denial and false explanation of it were competent.

In combating appellant's objections to the testimony, the special prosecutor's proposition was narrower than that which the Attorney General here advances. He pointed out that it tended to connect the accused with the crime by showing a motive. Not that the ring furnished the specific motive, but that the general motive was a financial

consideration. Appellant does not question that it was proper to show this motive, but seems to think that, when the state had shown the giving of the note as consideration for the service, the matter was concluded. Not necessarily so. Between the operation and the woman's death there were several days in which additional consideration or additional security might have been agreed upon. While the state's position was unnecessarily narrowed, we cannot doubt that it was legitimate to urge that the evidence bore upon the question of motive.

Whether appellant had come honestly by the ring, or was in possession of it as the fruit of a separate act of wrongdoing, does not affect the competency of the evidence. In either event, it tends to connect him with the deceased and with the crime; and, in the sense in which the word was used, it tends to show motive. So appellant's contention fails, predicated as it is upon error in admitting evidence which we find to have been properly received.

The suggestion by the state that the ring was taken from the woman's finger after her death might under other circumstances present a serious question. The idea is revolting. It inflames the mind. It is perhaps the least reasonable of the numerous inferences possible from the facts. Whether a legitimate inference, one which the state was at liberty to urge, is a question not before us. The "remark of counsel" is not presented here as an independent error. It was not so treated below. In the heat of exchanges in court overzeal of counsel is to be expected at times. Ordinarily, on timely objection, the court can so check or rebuke counsel and admonish the jury as to cure prejudice. We must assume that the trial judge would have taken whatever measures were necessary had his authority been invoked. This is no reflection on the astuteness or vigilance of appellant's counsel. They have made an able defense in a case where the evidence of guilt is overwhelming. We do not question the wisdom of any of their judgments. We point out merely that the "remark of counsel" is not here urged and is not available as independent error, to make it plain that we have neither approved nor disapproved it.

Finding no error, we must affirm the judgment. It is so ordered.

BICKLEY, C. J., and SIMMS, J., concur.

PARKER and CATRON, JJ., did not participate.

## ON REHEARING

WATSON, J.

The original opinion has been challenged only as to our disposition of the question arising out of the reception and subsequent striking of evidence regarding the ring of the deceased found in appellant's possession. The consideration of the present contentions requires an amplified statement of those proceedings.

The sheriff of Chaves county, testifying for the state, was asked if immediately after the death of the deceased it was reported to him that her ring was missing. This was the first question relating to the ring, and the objection was made that it was irrelevant to any issue in the case, and was an independent transaction, which could serve only to prejudice the jury against the defendant. On the overruling of the objection, the witness testified that he was so informed, and that he directed two deputies to search appellant for it, and that subsequently they gave him a ring which he then produced and which was marked as an exhibit. A deputy sheriff was then sworn and testified that he was sent by the sheriff to search appellant; that he told appellant he was looking for a diamond ring, and appellant replied that the only ring he had was the one on his finger; that on searching appellant the ring was found in his watch pocket. To all of these questions the original objection was reiterated. Then the witness was shown the ring and asked to identify it as the one found on appellant's person. The objection was renewed, and it was further pointed out that the consideration for the operation had already been shown to be a promissory note. Thereupon the special prosecutor made the statement of the state's theory of admissibility, closing with these words:

"That is the reason he took it off the woman's finger."

Then counsel objected that, since the real purpose of the evidence was now disclosed, it substantiated the contention which he had made from the beginning, that the evidence was irrelevant to the case on trial and constituted an independent transaction. This objection being overruled, the witness answered that it was the same ring. He was then asked if appellant had many any statement as to where he got the ring. The same objection was again interposed, in the course of which appellant's counsel interpreted the previous statement of the special prosecutor as the announcement of a purpose "to show robbery after death." This objection being overruled, the witness stated that appellant had said that he had obtained the ring from one Gates. Here adjournment was taken for the day. The next morning the court, without motion from either side, struck all of the evidence and directed the jury not to consider it. Thereupon appellant's counsel called attention to the prejudicial character of the statement of the special prosecutor. This was also stricken, on motion of the state, and the jury was directed not to consider it. Appellant's counsel then excepted that the prejudicial effect of the evidence and of the statement of the special prosecutor could not be cured by striking.

This recital discloses that the idea of an independent crime did not reach the jury through any evidence received or offered. It reached the jury only through the suggestion of the special prosecutor that appellant took the ring off the woman's finger, interpreted by appellant's counsel as a charge of robbery of the dead. The distinction has an important bearing on all of appellant's present contentions.

It is admitted that the evidence had a tendency to connect appellant with the deceased and thus had some probative value upon an issue in the case. But it is argued that the admissibility of the evidence is to be judged in the light of its announced purpose. So judged, appellant contends, the real purpose was to show the commission of an independent crime. He asserts the proposition that, if evidence is but slightly probative as to a material issue, and is also highly prejudicial, the latter characteristic, outweighing the former, should lead to its rejection. In

support of this he cites numerous passages from Wigmore on Evidence (2d Ed.) particularly sections 1864, 1904.

We may doubt if Professor Wigmore means to say more than that a trial judge may be supported in the exercise of a discretion to exclude such evidence. However that may be, the point is not well taken here for several reasons. ' In the first place, as already pointed out, it was not the evidence, but the remarks of counsel, that contained the prejudice. Further, most of the evidence had been properly received before any improper purpose had been disclosed. Again, in striking the evidence, the court must have acted favorably upon the very contention here made. True, he overruled it for the moment. Very little occurred thereafter, however, and we can attach no legal consequence to the night adjournment which intervened before the evidence was stricken.

We appreciate, of course, the importance of withholding from the jury evidence of an independent crime. With well-recognized exceptions, it is error to admit it. Among the numerous decisions cited by appellant to this point, we note some which may indicate the proper course to have been pursued and the proper limit of appellant's right. These are to the effect that, when a motive or state of feeling is to be shown, it may be proper to show that the defendant had been accused of or charged with another crime, though it would be error to permit the truth of such accusation or charge to be developed. Martin v. Commonwealth, 93 Ky, 189, 19 S. W. 580; Binns v. State, 46 Ind. 311; Riggs v. Commonwealth, 103 Ky. 610, 45 S. W. 866; Commonwealth v. Andrews, 234 Pa. 597, 83 A. 412; Menefee v. State, 67 Tex. Cr. R. 201, 149 S. W. 138. Applying that principle to the present case and assuming favorably to appellant, that it would have been error to permit the state to prove that appellant had become possessed of the ring by criminal means, it was still proper for the state to prove everything that it did prove.

So we conclude that the evidence was not erroneously received, and that this is not a case for the application of the doctrine that evidence may be so prejudicial that the

error in admitting it cannot be cured by striking. We conclude also that, if appellant's rights were invaded, it was in the announcement of an improper purpose for evidence already properly received; a case of misconduct of counsel.

Appellant further urges that, if he was wrong in assuming that the evidence was erroneously admitted, nevertheless the court erred in striking it of his own motion, because this deprived appellant of the right to rebut it. This is a novel proposition. While there was no formal motion to strike from either side, we cannot doubt that the trial judge justifiably considered appellant's constantly reiterated objection to all of the evidence as amounting to such a motion; this particularly in view of appellant's failure to object to the striking. He now protests that, considering his embarrassing situation, he was not called upon to object. It seems plain, however, that his situation was self-imposed. When the special prosecutor, arguing the admissibility of evidence obviously proper, intimated a purpose either to make further proof which would be objectionable or to use the evidence already in as the basis of objectionable argument, appellant made his choice. He objected, not to misconduct of counsel, but to the evidence. Had he properly directed his objection, he would have preserved both the right to rebut the evidence at the trial and the right here to urge any error arising out of misconduct of counsel. But, having taken advantage of the situation to seek and obtain what he was not entitled to, a striking of the evidence, he cannot now be heard to urge either misconduct of counsel or that the evidence was improperly stricken.

Appellant complains that to sustain the conviction on the theory of the admissibility of the evidence stricken, is to permit the state to change to a different theory in this court. Even assuming, though not justified by the record, that the prosecutors, during the adjournment, became convinced of the validity of appellant's objections and yielded the point, we still have only a case of invited error.

What we have said disposes of appellant's suggestion that the decision will be a precedent for the practice of introducing improper evidence, only to withdraw it after

the harm has been done, thus both saving the record and preventing rebuttal.

Considering appellant's age, the judgment amounts to a life sentence in the penitentiary. The case is important. We have not spared time or pains in the consideration of it. But, finding no error which warrants a new trial, we feel constrained to adhere to the original disposition of the appeal.

BICKLEY, C. J., and PARKER, SADLER, and HUDSPETH, JJ., concur.