### 17981

The STATE, Respondent, v. Clarence Kirby JONES and Joseph Franklin Jones, Appellants

(128 S. E. (2d) 114)

*Paul N. Uricchio, Jr., Esq.*, of Charleston, *for Appellants,*

October 24, 1962.

LEWIS, Justice.

The defendants, Clarence Kirby Jones and Joseph Franklin Jones, along with one Joe Roughton, were jointly indicted for breaking and entering the office building of Moody Oil Company in Charleston County, South Carolina, and with attempted safecracking. Joe Roughton had not been apprehended when the case was called at the May, 1960 term of the Court of General Sessions for Charleston County; and the trial proceeded against the defendants, Clarence Kirby Jones and Joseph Franklin Jones, resulting in their conviction, with recommendation to mercy, on both the charges of housebreaking and attempted safecracking. The defendant Joseph Franklin Jones was given a sentence of twelve and the defendant Clarence Kirby Jones a sentence of twenty years.

Both defendants have appealed and, under our view of the record, the only question, necessary to be determined, is whether or not the trial judge erred in refusing the timely motions of the defendants for a directed verdict of not guilty

as to both charges in the indictment, made upon the ground that the evidence was entirely circumstantial and failed to meet the requirements of the law as to a conviction upon circumstantial evidence. A determination of this question requires a review of the pertinent testimony.

The defendants did not testify, nor present any testimony at the trial, but relied upon the claimed failure of the State to present any testimony connecting them with the crime charged. The State relied entirely upon circumstantial evidence for a conviction.

During the early morning hours of March 29, 1960, the office building of the Moody Oil Company, located in the small community of Hollywood in Charleston County, about 18 miles from the City of Charleston, South Carolina, was broken into and an effort made by someone to enter a safe therein. The crime was discovered about 2 A. M. by an officer on patrol in the area. It appeared that a lock had been broken on one of the doors to the building and entry made into the office of the oil company, where a safe located therein had been struck several blows in an unsuccessful attempt to force it open. Left at the scene was a hand towel with the name "St. John Hotel" thereon, the property of the St. John Hotel in Charleston, South Carolina. The defendants were arrested between 9 and 10 A. M. on the day of the crime at the St. John Hotel, where they, along with Joe Roughton, had registered the day before. Joe Roughton was not present at the hotel and, as heretofore stated, had not been apprehended at the time of the trial of these defendants.

Shortly after discovery of the crime, a 1960 Ford automobile, belonging to Joe Roughton, was found parked in front of a vacant house about 220 yards back of the office of the oil company. There was nothing mechanically wrong with the automobile, the keys to which were found in the road nearby where they had apparently been dropped. There was found in the automobile various clothing and articles bearing the identification of Joe Roughton, but none con-

nected with these defendants. Three pairs of cloth gloves were also found on the seat of the automobile. Two or three sets of tracks of different shoe sizes were found leading to and from the automobile and the office building of Moody Oil Company. Two sets of tracks passed the automobile and went toward the Seaboard Railway tracks which ran nearby and through the Hollywood Community to the City of Charleston. The officers admitted that they could not identify the tracks as having been made by any particular person.

A short distance from the scene, there was found a sledge hammer, a hatchet, and two crowbars. Althongh these were checked by the officers the record fails to disclose any testimony connecting these instruments with the crime in question, other than the fact that they were found nearby, or as to the ownership thereof.

About 6:30 A. M. on the morning of the crime the defendants were seen about six miles from Hollywood, where the crime was committed, walking along the railroad tracks toward Charleston. The legs of their pants were wet and they stated to employees of the railroad, who identified them, that their car had broken down. There was testimony that there was a heavy dew in the area where the crime was committed. The defendants were next seen about 1.7 miles nearer Charleston, approximately one hour later, where they secured a ride to Charleston. Their first instructions to the driver who carried them into Charleston were that they desired to go to North Charleston, later changing to a garage in Charleston, but finally asking to be taken to the Star Restaurant where they left the vehicle. The defendant Joseph Jones was next seen at a clothing store where two pairs of trousers of different sizes were purchased by him, one to fit himself and the other pair for a considerably taller person. The pants of this defendant were wet to the knees and, after purchasing the trousers, he changed at the store, having the clerk to wrap his wet trousers and the other pair which he had purchased. He left the store and was next seen at the St. John Hotel a short time later, where he was arrested wearing the

new trousers and carrying the bundle wrapped for him at the clothing store. About fifteen or twenty minutes after the arrest of the defendant Joseph Jones, his cousin, the defendant Clarence Jones, who was about six feet tall, came to the hotel and was arrested. At the time of the arrest of Clarence Jones his pants were wet to the knees. From the description of the defendants and the other circumstances it is inferable that the extra pants purchased by Joseph Jones were for his cousin, the defendant Clarence Jones.

At the time of their arrest and subsequently the defendants made statements of their activities and whereabouts on the previous night which were inconsistent with their presence on the railroad about six miles from Hollywood at 6:30 A. M. In other respects, the statements allegedly made to the officers cast suspicion upon the claims of innocence by the defendants. They admitted having been in the company of Joe Roughton on the previous night, but said that after an argument with Roughton they left his automobile and did not see him again. They denied at all times any connection with the crime charged.

The testimony shows that Joe Roughton is a nonresident of the State of South Carolina, but fails to show the residence of these defendants.

As heretofore stated, the State relied entirely upon circumstantial evidence to prove the guilt of the defendants, the main circumstances relied upon being as follows:

(1) The towel from the St. John Hotel, where the defendants were registered, found at the scene of the crime.

(2) The automobile of Joe Roughton found about 220 yards from the scene with three pairs of cloth gloves left therein and the admissions by the defendants that they were with Joe Roughton earlier on the night of the crime.

(3) Tracks found at the scene leading to the automobile of Joe Roughton and on toward the railroad, along which the defendants were seen walking about six miles from the scene at approximately 6:30 A. M. on the morning of the crime.

(4) The tools found a short distance away.

(5) Discrepancies between the statements made by the defendants as to their whereabouts on the night of the crime and their presence on the railroad tracks about six miles from the scene of the crime.

(6) The fact that the legs of the pants of the defendants were wet, indicating that they might have been in wet grass and bushes during the night or morning.

(7) The purchase of, and change to, new clothing on the morning of the crime.

The State contends that the circumstances presented a jury issue as to the guilt of these defendants, and that the motion of the defendants for a directed verdict of not guilty was properly refused by the trial judge. The defendants, on the other hand, contend that such circumstances, while creating suspicion of their guilt, fall short of the requirements of the law where circumstantial evidence is relied upon for conviction.

In considering whether the trial judge erred in not directing a verdict in favor of the defendants, of course, we must view the evidence in the light most favorable to the State. *State v. Littlejohn,* 228 S. C. 324, 89 S. E. (2d) 924.

The rules by which the sufficiency of circumstantial evidence is measured in such cases is set forth in the Littlejohn case as follows:

"It must be remembered, too that there is one test by which circumstantial evidence is to be measured by the jury in its deliberations, and quite another by which it is to be measured by the trial judge in his consideration of the accused's motion for a directed verdict. As to the former, it is necessary that every circumstance relied upon by the state be proven beyond a reasonable doubt; and all of the circumstances so proven be consistent with each other, and, taken together, point conculsively to the guilt of the accused to the exclusion of every other reasonable hypothesis. It is not suf-

ficient that they create a probability, though a strong one; and if, assuming them to be true, they may be accounted for upon any reasonable hypothesis which does not include the guilt of the accused, the proof has failed. *State v. Kimbrell,* 191 S. C. 238, 4 S. E. (2d) 121. * * * Such test goes to the weight of the evidence, and is therefore to be applied by the jury in their consideration of it. *State v. Roddey,* 126 S. C. 499, 120 S. E. 359. But on a motion for direction of verdict, the trial judge is concerned with the existence or nonexistence of evidence, not with its weight; and, although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there be any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced. *State v. Brown,* 205 S. C. 514, 32 S. E. (2d) 825".

While the case is not free from difficulty, after a careful review of the record, we are convinced that there was no substantial evidence presented by the State from which the guilt of the defendants could fairly and logically be deduced.

The presence of the hand towel of the St. John Hotel at the scene of the crime is strongly relied upon by the State. The defendants, with Joe Roughton, had registered at the St. John Hotel on the day before the commission of the crime. An employee of the hotel testified that it was customary to place in rooms, such as rented by the defendants, two hand towels but could not testify as to whether two had been placed in the room of the defendants. The officers testified that there was only one hand towel in their room when they were arrested. There was testimony that quite a number of hand towels are taken from the rooms of the hotel by guests without the knowledge of the management. The record shows that the hand towel came from the St. John Hotel, but fails to sufficiently connect its appearance at the scene of the crime with these defendants to form the basis of a conviction. The State did not show that the towel had ever been in the pos-

session of the defendants, but only that it was a towel belonging to the hotel where the defendants were staying.

The tools found some distance from the Moody Oil Company were not connected with the defendants, nor does the testimony show their connection with the alleged crime. The tracks found in the vicinity of the scene of the crime were not compared with those of the defendants and the officers testified that they could not identify the tracks as having been made by any particular person. The fact that the defendants were seen, approximately six miles from the scene of the crime, walking along the railroad toward Charleston, and the conflicting statements as to their whereabouts on the night of the crime affords basis for disbelief of their statements as to where they were at the time and their activities during the night, but does not prove their presence at the scene in the absence of some substantial testimony connecting them with the crime. Likewise, the presence of the automobile of Roughton near the scene of the crime and the admissions by these defendants to the officers that they were with Roughton earlier in the night affords no sufficient basis for the presumption that they continued together until the crime was committed, in the absence of other connecting circumstances.

Considering all of the facts and circumstances together we are convinced that the record fails to disclose testimony of such substantiality as is required for a fair and logical inference of guilt. See: *State v. Manis,* 214 S. C. 99, 51 S. E. (2d) 370. The trial judge should, therefore, have directed a verdict of acquittal.

Reversed.

TAYLOR, C. J., Moss and BRAILSFORD, JJ., and LEGGE, Acting Associate Justice, concur.

BUSSEY, J., not participating.