22175

The STATE, Respondent, v. Daryl SCHROCK, Appellant.

(322 S. E. (2d) 450)

Supreme Court

*Asst. Appellant Defender, Stephen P. Williams*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Carolyn M. Adams*, Columbia, and *Sol. Joseph P. Mizzell, Jr.,* Orangeburg, *for respondent.*

Heard Oct. 1, 1984.

Decided Oct. 31, 1984.

*Per Curiam:*

Defendant-Appellant, Daryl Schrock, was convicted of the murders of Mr. and Mrs. C. L. Strickland and was sentenced to two consecutive life terms. The issue on appeal is the trial judge's refusal to grant the Schrock motion for a directed verdict and a motion for summary judgment *non obstante veredicto.* We find that Schrock was entitled to a directed verdict and reverse.

Early on the morning of April 21, 1983, the Orangeburg County Sheriff's Department responded to the report of a fire at the home of Mr. and Mrs. Strickland. The Sheriff's investigation revealed the fire had nearly consumed the entire resi-

dence. The body of Mr. Strickland was found amid the remains of the burned home. The investigators found Mrs. Strickland's body floating in a small pond approximately two hundred feet from the residence. Autopsy reports revealed nothing about the cause of Mr. Stickland's death beyond the obvious fact of burning. According to the report, Mrs. Strickland died of drowning in combination with several blows to her head.

The police officers searched the area surrounding the house for evidence. Between the garage and the house, they found a footprint which was photographed. They made a plaster cast of the footprint. Additionally, they discovered palm prints on the handrail of the pond dock. The police officers also found an empty oil can, an old rolled-up newspaper, and several Marlboro cigarette butts on the premises.

Schrock gave the police officers a statement after his arrest on the following day and after being given *Miranda* warnings. Schrock stated that on the afternoon before the fire that night, he had caught a ride with Joe DeFino to the Chevrolet dealership in the town of North. He further stated that he left DeFino and walked down Water Ferry Road—the road which intersects with the long driveway to the Strickland residence to Highway 178 toward Orangeburg and tried to buy some LSD. When he was not successful in that attempt, he spent the night in the woods. The next morning, he met Elike Harris Williamson and Frank Luther Bolen and went with them to the town of Salley to work on a house. He further stated that he knew nothing of the fire nor the murders.

At trial, the State produced numerous witnesses who testified they had seen Schrock the afternoon before the fire and the next morning. They all confirmed that he was wearing camoflaged pants, a T-shirt, tennis shoes and a denim jacket. The closest that any of the witnesses could place Schrock to the Strickland home was approximately one mile "as the crow flies" or three or four miles by road.

The State presented evidence in an effort to link Schrock to the deaths. An oil can which apparently had contained motor oil was admitted into evidence. Also cigarette butts found at the scene were admitted. Schrock admitted to officers that he smoked Marlboro brand cigarettes — the same brand as the ones found at the scene. Extensive tests were run on the cigarette butts by the Federal Bureau of Investigations for

saliva matching. The tests did not indicate that Schrock had smoked them. Tests performed on the oil can did not supply any conclusive connection between the scene and Schrock.

Perhaps the most damaging evidence against Schrock was the presence of a footprint at the scene and the presence of a similar footprint at locations on Water Ferry Road and in Salley, where Schrock admitted having been. At oral argument, counsel for the State submitted that the best evidence it had was the fact that on the morning after the incident, he disposed of clothes and tennis shoes he had been wearing, that he wore a size nine and one-half tennis shoe, and that he did not present an alibi.

When a motion for a directed verdict is made in a criminal case, the judge is concerned with the existence or non-existence of evidence not its weight. The trial judge should grant a directed verdict motion when the evidence merely raises a suspicion that the accused is guilty. It is his duty to submit the case to the jury if there is any evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused, or from which guilt may be fairly and logically deduced. *State v. Irvin,* 270 S. C. 539, 243 S. E. (2d) 195 (1978); *State v. Hendrix,* 270 S. C. 653, 244 S. E. (2d) 503 (1978). In reviewing the appeal of a refusal to grant a directed verdict of not guilty, this Court must look at the evidence in the light most favorable to the State. *State v. Wharton,* 263 S. C. 437, 211 S. E. (2d) 237 (1975); *State v. Stewart,* 278 S. C. 296, 295 S. E. (2d) 627 (1982).

Here the evidence is exclusively circumstantial. Nothing in evidence places Schrock at the scene of the crime. Experts could not definitely testify that the footprint found at the scene was made by the shoes purported to belong to Schrock. David Alvin Caldwell, forensic scientist from the State Law Enforcement Division, made the plaster cast of the shoe print. In comparing the footprint, as best he could, with the shoes allegedly worn by Schrock, Caldwell said, "... there was just not quite enough of the individual marks to conclusively identify those shoes as having made those tracks." Nor could the State establish that the cigarettes found at the scene had been smoked by Schrock. The handprint on the pond dock clearly was not his. The shoes presented as evidence were not identified by any witness who had seen him wearing tennis shoes.

In a prior case dealing with circumstantial evidence in a criminal context, this Court held:

> Where it is undertaken by the prosecution in a criminal case to prove the guilt of the accused by circumstantial evidence, not only must the circumstances be proven, but they must point conclusively — that is, to a moral certainly — to the guilt of the accused; they must be wholly and in every particular perfectly consistent with each other, and they must further be absolutely inconsistent with any other reasonable hypothesis than the guilt of the accused.
>
> ... All of the facts proved must be consistent with each other, and, taken together, should be of a conclusive nature and tendency, producing a reasonable and moral certainty that the appellant and no one else committed the offense charged. It is not sufficient that they create a probability, though a strong one; and if, therefore, assuming all the facts to be true, which the evidence tends to establish, they may yet be accounted for upon any hypothesis which does not include the guilt of appellant, then the proof fails . . . [It] is not sufficient to establish a probability of guilt arising from the doctrine of chances that the fact charged is likely to be true.

State v. Manis, 214 S. C. 99, 51 S. E. (2d) 370, at 371 (1949).

Argument of counsel for the State that Schrock has no alibi is without merit. It is not incumbent upon an accused person to prove that he was somewhere else at the time and place of the crime. By bringing the case, the State assumes the burden of proving that the accused was at the scene of the crime when it happened and that he committed the criminal act. *See, State v. Mayfield*, 235 S. C. 11, 109 S. E. (2d) 716, *cert. denied*, 363 U. S. 846, 80 S. Ct. 1616, 4 L. Ed. (2d) 1728, *rehearing denied*, 364 U. S. 857, 81 S. Ct. 36, 5 L. Ed. (2d) 81 (1959). *State v. Bealin*, 201 S. C. 490, 23 S. E. (2d) 746 (1943).

Coming into Court, Schrock was clothed with the presumption of innocence. It was not incumbent upon him to prove that he was not guilty of these murders. On the other hand, the State, by issuing an indictment and bringing the case to trial, assumed the burden of proving that he was guilty beyond a reasonable doubt. If he was guilty, the State

simply has not been able to muster circumstantial or direct evidence warranting that finding. The jury weighs the evidence but when there is an absence of evidence, it becomes the duty of the trial judge to direct a verdict and a corresponding duty is imposed on this Court.

The evidence presented by the State in the instant case may raise a suspicion of Schrock's guilt, but it does not point conclusively, nor to a moral certainty, nor beyond a reasonable doubt, to his guilt. From the record before us, we can reach no other conclusion but that Schrock was entitled to a directed verdict of not guilty based on the lack of evidence.

We need not reach the other issue raised by Schrock.

We reverse and remand for entry of a verdict of acquittal.