569 S.E.2d 379

**The STATE, Respondent,**

v.

**Eddie Lee ARNOLD, Appellant.**

**No. 3523.**

Court of Appeals of South Carolina.

Heard April 10, 2002.

Decided June 27, 2002.

Rehearing Denied Sept. 18, 2002.

J. Brent Kiker and Scott M. Merrifield, both of Kiker & Douds, of Beaufort; and Samuel C. Bauer, of Hilton Head Island, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Derrick McFarland, all of Columbia; and Solicitor Randolph Murdaugh, III, of Hampton, for respondent.

HOWARD, Judge:

Eddie Lee Arnold was convicted of murder and sentenced to life imprisonment. Arnold raises several issues on appeal, including the assertion that the circuit court erred in denying his motion for a directed verdict. We agree that the evidence is insufficient to support the conviction and, therefore, we reverse.

## FACTS/PROCEDURAL HISTORY

On the morning of June 18, 1997, Dr. Jennings Cox ("the victim") left his office for a dental appointment. Because the victim's car was being repaired, he borrowed a co-worker's car. The victim did not return from his dental appointment or answer his pager that afternoon, and his wife subsequently filed a missing person's report with the Savannah, Georgia, Police Department. Three days later, his body was located on the side of an access road in a wooded area in Colleton County, South Carolina.

Two days after the victim disappeared, the borrowed car was located in a parking lot in Johnson City, Tennessee. In a search of the vehicle, Tennessee police discovered a plastic tab from a coffee cup lid in the center console. In the meantime, Colleton County detectives learned that the victim had recently been involved in a sexual relationship with Arnold. Arnold's fingerprints were compared with the fingerprint on the coffee cup lid, and they matched. Arnold was then charged with murdering the victim. Arnold was later tried and convicted of murder. He appeals from the jury verdict.

## DISCUSSION

Arnold argues the trial judge erred in failing to grant a directed verdict. We agree.

The State's case is entirely circumstantial. When the State relies exclusively on circumstantial evidence and a motion for directed verdict is made, the circuit court is concerned with the existence or nonexistence of evidence, not with its weight. *State v. Mitchell*, 341 S.C. 406, 409, 535 S.E.2d 126, 127 (2000). The circuit court should not refuse to grant the directed verdict motion when the evidence merely

raises a suspicion that the accused is guilty. *Mitchell,* 341 S.C. at 409, 535 S.E.2d at 127. "The trial judge is required to submit the case to the jury if there is 'any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may fairly and logically be deduced.'" *Id.* (quoting *State v. Edwards,* 298 S.C. 272, 275, 379 S.E.2d 888, 889 (1989)). In reviewing a denial of a directed verdict motion, this Court must view the evidence in a light most favorable to the State. *State v. Childs,* 299 S.C. 471, 477, 385 S.E.2d 839, 843 (1989).

Considering the evidence in a light most favorable to the State, the following facts were established. Bobby Ray Ware, a long-distance truck driver, had an ongoing, sexual relationship with the victim. Ware also knew Arnold, and on June 13, 1997, Arnold asked Ware to drive him from Jacksonville, Florida, to Savannah, Georgia. Upon arriving in Savannah, Arnold stayed at Ware's apartment where he later met the victim. During this encounter, Arnold and the victim engaged in sexual acts. According to Ware, Arnold also displayed a handgun during his stay at Ware's apartment.

On the morning of June 18, the victim's wife drove him to his office where he borrowed a co-worker's new automobile. The victim left his office between 10:30 and 11:00 a.m. for a dental appointment. At 1:20 p.m., the victim called his secretary, and as a result of this call, she cancelled his afternoon appointments. During the afternoon, both the victim's wife and his secretary unsuccessfully tried to contact him by calling his pager. On the evening of June 18, the victim's wife filed a missing persons report with the police.

On June 21, the victim's body was discovered in a wooded area approximately one-quarter mile down a dirt road in Colleton County, South Carolina. The victim had been shot, once in the heart and once in the head. No tissue, blood, shell casings, bullets, fragments or other evidence was found at the scene. No blood spatters were found on any plants or groundcovering, and there was no evidence of a struggle. In short, no evidence indicated whether the victim had been murdered in the woods where he was found or at a different location. An autopsy performed on June 22, 1997, indicated

that the time of death was approximately three and one-half days before the examination.

The borrowed automobile was found in Johnson City, Tennessee, on June 20.[1] The only fingerprint capable of analysis inside the car was on the tab of a plastic coffee cup lid and was later identified as belonging to Arnold.[2] No evidence of the homicide, such as blood or bullet holes, was discovered in the vehicle.

On June 17, the day before the homicide, Ware left Savannah to pick up a shipment, heading for Chicago, Illinois. He was supposed to deliver the shipment the following afternoon. However, according to Ware, when he arrived in Chicago, the dispatcher made him wait until the morning of June 19 to unload. Ware testified that while he was in Chicago he received a message from his dispatcher to call a number in Tennessee. Ware stated he called the number and spoke with Arnold by telephone on June 19. During this call, Arnold stated he was back in Tennessee.[3]

 Other than the bullet wounds, there is no evidence of the circumstances under which the victim met his death. The State did not establish the scene of the murder, although in a light most favorable to the State, the lack of blood or other evidence in the woods did not exclude the possibility that Cox was shot where he was found. Arnold's gun was not connected to the crime, and no evidence placed Arnold at any crime scene, in the woods or otherwise. Nor is there any evidence of the circumstances by which Arnold obtained possession of the borrowed vehicle, if at all,[4] or that the vehicle was involved in the murder. At most, the State's testimony established

---

1. The dissent repeatedly contends that Johnson City, Tennessee, is near the home of Arnold's father in Gray, Tennessee, but there is no evidence in the record to support this contention.

2. Latent fingerprints not matching Arnold's were also recovered from the exterior of the vehicle. Although they were forwarded for analysis, they were not compared to other known suspects.

3. The State also introduced evidence that additional phone calls were placed on the day the victim disappeared. These calls were made from Arnold's father's phone in Tennessee to Ware's apartment.

4. The dissent provides citations standing for the proposition that possession, soon after a murder, of property belonging to the victim may be

that the borrowed car was capable of traversing the dirt road leading to the victim's body.[5]

The above evidence supports the conclusion that Arnold knew the victim, had access to him, and was in the area on the day of the homicide. The State's evidence also reasonably tends to prove that Arnold did have some contact with the victim on June 18, in view of the fact that his fingerprint was found in the borrowed car.[6] Furthermore, the evidence provides a reasonable basis for concluding that Arnold drove the car to Tennessee. Indeed, in a light most favorable to the State, Arnold had a gun which could possibly have been used to kill the victim. However, even viewing the evidence in a

the foundation of an inference of guilt. *See* 40A Am.Jur.2d *Homicide* § 252 (1999); 41 C.J.S. *Homicide* § 245 (1991). However, cases cited under these sections involved defendants with no prior relationship to the victim or, at best, a casual relationship with the victim. *See Wilson v. United States*, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896) (noting defendant, who was recently introduced to the deceased by a third party, was in possession of the victim's belongings); *Gibson v. State*, 178 Ga. 707, 174 S.E. 354 (1934) (indicating accused was in possession of the deceased's watch, but not indicating any prior relationship between the accused and the deceased); *State v. Grissom*, 35 N.M. 323, 298 P. 666 (1930) (noting dentist, convicted of second degree murder for producing an abortion after which the mother died, had the deceased woman's recently missing ring); *People v. Mitchell*, 176 A.D.2d 897, 575 N.Y.S.2d 361 (N.Y.App.Div.1991) (noting defendant, who had assisted performing renovation work for the deceased, was found in possession of the victim's credit card); *McKay v. State*, 707 S.W.2d 23 (Tex.Crim.App.1985) (affirming capital murder conviction and noting at the time of arrest defendant was found driving a car belonging to the victim's father when he had no previous relationship with either person). Unlike those cases, Arnold and the victim had an intimate relationship.

5. The dissent notes an "examination of the [car] revealed scratches on its exterior that suggested, according to the lead investigator, it had been driven down 'something rough.'" However, read as a whole, the investigator's testimony makes it clear that this conclusion is purely speculative.

6. The dissent points out the proposition that fingerprint evidence may be sufficient to support a conviction if the prints are "found at the scene of the crime under such circumstances that they could only have been made at the time of commission of the crime." 29A Am.Jur.2d *Evidence* § 1482 (1994). However, Arnold's prints were not found at any place established as the scene of the crime. Arnold's fingerprint was located only on a coffee cup lid in the car. The car was never connected to the crime in any way.

light most favorable to the State, the State has failed to meet the "any substantial evidence" standard.

In *State v. Schrock*, 283 S.C. 129, 322 S.E.2d 450 (1984), the defendant was convicted of two murders. At trial, the State attempted to link Schrock to the murders by presenting evidence Schrock was in the area of the murders and that a footprint at the scene was similar to footprints found in an area in which the defendant admitted he had been walking. However, our supreme court reversed the convictions, ruling Schrock was entitled to a directed verdict because the evidence was exclusively circumstantial and nothing placed Schrock at the scene of the crime. The court concluded the circumstances were suspicious, but were insufficient to establish a basis for the conviction.

In the more recent case of *State v. Martin*, 340 S.C. 597, 533 S.E.2d 572 (2000), our supreme court again reversed a murder conviction when the State's case was purely circumstantial and the evidence was insufficient to establish the defendant's presence at the scene of the crime at the time of the murder. Although the State presented evidence that a car resembling the one in the possession of the defendant was at the victim's apartment complex the night of the murder, there was no evidence that this car was actually the car in the defendant's possession. In reversing the conviction, our supreme court stated, "[l]ike the footprints in *Schrock*, the possibility that it was the same car, without any other evidence placing the defendants at the scene, is not enough evidence to place [the defendant] inside the Victim's apartment." *Id.* at 603, 533 S.E.2d at 575.

Except in cases where the crime is alleged to be procured or caused indirectly, our supreme court has clearly stated that "[b]y bringing the case, the State assumes the burden of proving that the accused was at the scene of the crime when it happened and that he committed the criminal act." *Schrock*, 283 S.C. at 133, 322 S.E.2d at 452. The evidence in this case, as in *Schrock* and *Martin*, established only that the circumstances were strongly suspicious, but falls short of providing a basis upon which the jury could have reasonably and logically determined Arnold's guilt.[7]

---

7. The dissent argues that in *Schrock* and *Martin* the evidence was only similar or resembled the defendants' shoes or car, whereas in this case

## CONCLUSION

We find that the evidence presented by the State does not rise to the level of substantial evidence which reasonably tended to prove Arnold's guilt or from which his guilt may fairly and logically be deduced. Therefore, Arnold's murder conviction is

**REVERSED.**[8]

HEARN, C.J., concurs.

GOOLSBY, J., dissents in a separate opinion.

GOOLSBY, Judge (dissenting):

I respectfully dissent and would hold the evidence, albeit entirely circumstantial, is sufficient to withstand a motion for directed verdict.[9]

The defendant and the victim had engaged in sexual relations. The victim, a child psychologist, lived and worked in Savannah, Georgia. On June 18, 1997, he *borrowed* an almost new BMW Z 3 from another doctor to keep a dental appointment; however, he never arrived at the dentist's office. The last time his office heard from him was at 1:20 that afternoon. Two days later, on June 20, 1997, the BMW was found abandoned in a parking lot in Johnson City, Tennessee. The next day, June 21, 1997, the victim's body was discovered by the side of a dirt road in a wooded area near State Highway 61 and Interstate 95 in Colleton County, South Carolina. He had been shot twice, having apparently died sometime on June 18, 1997. His wallet was missing. Just a few hours before, the victim had withdrawn $300.00 from an ATM.

---

there is no question but that the fingerprint on the coffee cup lid belonged to Arnold. However, this overlooks the fact that the evidence in *Schrock* and *Martin* was discovered or viewed *at the scene of the crime.* Arnold's fingerprint was not found at any place established as the scene of the crime, but was only found on a coffee cup lid in a vehicle which had been in the possession of the victim at some time before he was killed.

**8.** In light of our decision to reverse Arnold's murder conviction, we need not address the other issues on appeal.

**9.** Because the majority did not address the other issues that the defendant raises on appeal, I will not do so either.

Subsequently, an examination of the BMW uncovered a coffee cup lid that bore the defendant's fingerprints. There was neither any evidence that the defendant ever had access to the automobile before the victim borrowed it nor any explanation regarding how an article with the defendant's fingerprint on it wound up inside the car. Further examination of the BMW revealed scratches on its exterior that suggested, according to the lead investigator, it had been driven down "something rough."

Investigators also learned that the defendant's father lived in Gray, Tennessee, not far from Johnson City where the BMW was found. On June 19, 1997, Bobby Ray Ware spoke to the defendant from Chicago and learned the defendant "was back in Tennessee." Ware, a long-distance truck driver, had days before the victim's murder introduced the victim to the defendant. Ware knew the defendant to carry a gun and had last seen him in Savannah on June 17, 1997.

From this evidence, the jury could have found, as it obviously did, that the victim and the defendant had a sexual relationship, that they met in Savannah sometime after 1:20 p.m. on June 18, 1997, that they drove to Colleton County, where the defendant killed the victim, stole his wallet, the money, and the BMW, and that the defendant then drove the BMW to Tennessee, where he abandoned the vehicle, went to his father's house, and spoke by telephone to Ware the following day. Because no other plausible explanation was offered for how the car could have ended up some distance from where the victim's body was found, the jury could have reasonably concluded that the defendant had absconded with the car, which in turn would have led to the inference that he killed the victim in order to take possession of it.[10]

---

**10.** *See* 40A Am.Jur.2d *Homicide* § 252, at 91 (1999) ("Possession, soon after a murder, of articles apparently taken from the murder at the time of death, if not satisfactorily accounted for, may be the foundation of ... [an] inference of guilt."); 41 C.J.S. *Homicide* § 245, at 96 (1991) ("It is competent to introduce in evidence the fact that, after the killing, accused had possession of property belonging to deceased ...."); *cf.* 29A Am.Jur.2d *Evidence* § 1482, at 864 (1994) ("Evidence of fingerprint ... identification may be sufficient to support a conviction in a criminal prosecution [and] is sufficient to establish identity if the prints are found at the scene of the crime under such circumstances that they could only have been made at the time of commission of the crime.").

I view it as more than a mere coincidence that the defendant's fingerprints were found on a coffee cup lid inside an automobile that the victim had borrowed on the day he was murdered and that the automobile was found abandoned not far from where the defendant's father lived. Indeed, the defendant concedes in his brief that these facts could lead to the reasonable inference that he had "had contact with" the BMW at some point prior to its discovery.

The majority relies on *State v. Schrock*[11] and *State v. Martin*[12] to support its decision to reverse the defendant's conviction.

But this is not a case, as was *Schrock*, where the only evidence linking the defendant to the crime was footprints at the scene of a murder that were *similar* to known footprints of the defendant. There, the experts could not definitely testify that the footprints at the scene were made by the defendant's shoes.

Neither is this a case, as was *Martin*, where the defendant's car was not definitely identified as the car seen at the victim's apartment complex the night she was murdered. There, the State could show only that the latter car *resembled* the defendant's car.

Here, there is no question but that the fingerprint on the coffee cup lid belonged to the defendant.[13] Moreover, in addition to the unexplained presence of the defendant's fingerprint in the BMW, there was, as was mentioned above, evidence of a prior sexual relationship between the defendant and the victim, evidence that the defendant possessed a gun, and evidence from which the jury could infer that the defendant drove from Georgia or South Carolina to Tennessee in an automobile that he had no right to possess.

---

11. 283 S.C. 129, 322 S.E.2d 450 (1984).

12. 340 S.C. 597, 533 S.E.2d 572 (2000).

13. The majority misapprehends the point made in this dissent, i.e., that the failure in *Schrock* and *Martin* was in connecting the evidence at the scene of the crime to the particular defendant on trial. In the current appeal, that connection was made—no one disputed the accuracy of the fingerprint evidence.

I do not overlook the cases cited by the defendant, *State v. Mitchell*, 341 S.C. 406, 535 S.E.2d 126 (2000), and *State v. Jones*, 241 S.C. 271, 128 S.E.2d 114 (1962). They, too, may be distinguished from the one here.

In *Mitchell*, the supreme court held the State's proof that the defendant entered the house was insufficient where the only evidence the State offered was a fingerprint of the defendant lifted from a screen propped up against the house, a house that he had been in and around on at least three occasions prior to the burglary. Here, there is no evidence that the defendant was ever in or around the BMW before the victim disappeared.

In *Jones*, which the supreme court has cited only once—and that in a concurring and dissenting opinion—the supreme court held the State failed to prove that the defendants broke and entered an office building where the State did not connect the defendants to the evidence found at or near the scene, evidence that included a monogrammed towel from the hotel where the defendants were staying.[14] Here, fingerprint evi-

---

14. This is the way the supreme court characterized the evidence in *Jones:*

> The presence of the hand towel of the St. John Hotel at the scene of the crime is strongly relied upon by the State. The defendants, with Joe Roughton, had registered at the St. John Hotel on the day before the commission of the crime. An employee of the hotel testified that it was customary to place in rooms, such as rented by the defendants, two hand towels but could not testify as to whether two had been placed in the room of the defendants. The officers testified that there was only one hand towel in their room when they were arrested. There was testimony that quite a number of hand towels are taken from the rooms of the hotel by guests without the knowledge of the management. The record shows that the hand towel came from the St. John Hotel, but fails to sufficiently connect its appearance at the scene of the crime with these defendants to form the basis of a conviction. The State did not show that the towel had ever been in the possession of the defendants, but only that it was a towel belonging to the hotel where the defendants were staying.

> The tools found some distance from the Moody Oil Company were not connected with the defendants, nor does the testimony show their connection with the alleged crime. The tracks found in the vicinity of the scene of the crime were not compared with those of the defendants and the officers testified that they could not identify the tracks as having been made by any particular person. The fact that the defendants were seen, approximately six miles from the scene of the crime, walking along the railroad toward Charleston, and the conflicting

dence together with the evidence that the defendant and the victim intimately knew each other and that the BMW was found near the home of the defendant's father before the discovery of the victim's body is sufficient in my mind to connect the defendant to the murder.

I would affirm the trial court's denial of the defendant's motion for a directed verdict of acquittal.

statements as to their whereabouts on the night of the crime affords basis for disbelief of their statements as to where they were at the time and their activities during the night, but does not prove their presence at the scene in the absence of some substantial testimony connecting them with the crime. Likewise, the presence of the automobile of Roughton near the scene of the crime and the admissions by these defendants to the officers that they were with Roughton earlier in the night afford[] no sufficient basis for the presumption that they continued together until the crime was committed, in the absence of other connecting circumstances.
*Jones*, 241 S.C. at 277–78, 128 S.E.2d at 117–18.