605 S.E.2d 529

**The STATE, Petitioner,**

v.

**Eddie Lee ARNOLD, Respondent.**

**No. 25892.**

Supreme Court of South Carolina.

Heard Jan. 6, 2004.
Decided Nov. 8, 2004.
Rehearing Denied Dec. 14, 2004.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Derrick K. McFarland, of Columbia; and Solicitor Randolph Murdaugh, III, of Hampton, for petitioner.

Scott M. Merrifield and J. Brent Kiker, both of Kiker & Douds, P.A., of Beaufort; and Samuel C. Bauer, of Hilton Head Island, for respondent.

Justice MOORE:

Respondent Eddie Lee Arnold was convicted of murdering Dr. Jennings Cox of Savannah, Georgia. The State appeals the Court of Appeals' decision [1] reversing the denial of a directed verdict of acquittal. We affirm.

---

1. *State v. Arnold,* 351 S.C. 302, 569 S.E.2d 379 (Ct.App.2002).

## FACTS

Dr. Cox was missing for three days when his body was found off a dirt road near I–95 in Colleton County on June 21, 1997. He had been shot twice, once in the head and once in the chest. Although both bullets exited the victim's body, no projectiles or human tissue were found at the scene, nor was there any blood spattering or evidence of a struggle. The victim had no wallet or identification but he was still wearing a watch and gold ring.

The last day Dr. Cox was seen alive was June 18. He went to his office in Savannah that morning where he saw patients as a child psychologist. Because his car was being repaired, his wife drove him to work. Between 10:30 and 11:00 a.m., Dr. Cox borrowed a colleague's car to go to a dentist appointment. The car was a nearly-new BMW Z3 two-seater, a car Dr. Cox had never borrowed before.

Dr. Cox never returned to the office. At about 1:20 p.m., he called his secretary and she cancelled his remaining appointments. Dr. Cox withdrew money from an ATM at a Hardeeville bank that day.[2] His wife paged him every half-hour from about 2:30 until 5:30 p.m. without success. She then filed a missing persons report.

Shortly thereafter, Dr. Cox's office manager discovered a floppy disk marked "personal" lying on Dr. Cox's computer. After viewing the data contained on the disk, she contacted police. The information on the disk included the name of Bobby Ray Ware who was subsequently interviewed by police.

Ware was the State's chief witness at trial. He testified he was employed as a long-distance truck driver and lived in Savannah. He had had a sexual relationship with Dr. Cox for more than a year but knew him only by the name "Jay." They first met at a rest area on I–95 when "Jay" performed oral sex on him. After that, "Jay" would come to Ware's house about once a week for sex. Because Ware knew "Jay" liked to have sex with truckers, on the weekend of June 14–15 he introduced "Jay" to respondent who was staying with Ware. That weekend, "Jay" and respondent had sex at Ware's house.

---

2. Hardeeville is located along I–95 in Jasper County between Savannah and Colleton County.

Ware also testified he had seen respondent in possession of a gun while respondent was staying with him.

Ware left at 6:00 a.m. the following Tuesday, June 17, to drive to Chicago. Respondent was still staying at Ware's residence. On June 19, Ware received a message from respondent to call him at a phone number in Tennessee. Ware later contacted respondent at a phone number identified as belonging to respondent's father who lived in Gray, Tennessee.

Meanwhile, on June 20, the borrowed BMW was found in a parking lot in Johnson City, Tennessee. There was no blood in the car. When recovered, it had some unspecified scratches on it. The only evidence found in the car was a fingerprint on a tab from a coffee cup lid found in the center compartment between the seats. The fingerprint was identified as respondent's right thumbprint.

Respondent was arrested at his father's house in Tennessee on June 27. The State's theory of the case was that respondent and Dr. Cox drove to the woods where respondent shot Dr. Cox while Dr. Cox was kneeling "either by force or for sex." Respondent then drove the car to Tennessee and stopped for coffee on the way.

## ISSUE

Was there any substantial evidence to submit the case to the jury?

## DISCUSSION

The Court of Appeals majority found there was no substantial evidence to submit the case to the jury and a directed verdict of acquittal should have been granted.

The trial court has a duty to submit the case to the jury where the evidence is circumstantial if there is substantial circumstantial evidence which reasonably tends to prove the guilt of the accused or from which his guilt may be fairly and logically deduced. *State v. Martin*, 340 S.C. 597, 533 S.E.2d 572 (2000); *State v. Williams*, 321 S.C. 327, 468 S.E.2d 626 (1996). Unless there is a total failure of competent evidence as to the charges alleged, refusal by the trial judge to direct a verdict of acquittal is not error. *State v. Irvin*, 270

S.C. 539, 243 S.E.2d 195 (1978). The trial judge should grant a directed verdict, however, when the evidence merely raises a suspicion that the accused is guilty. *State v. Martin, supra.* On appeal of the denial of a directed verdict of acquittal, we must look at the evidence in the light most favorable to the State. *State v. Martin, supra; State v. Williams, supra.*

■ Viewing the evidence most favorably to the State, respondent's fingerprint on the coffee cup lid tab establishes he was in the borrowed BMW on the same day the victim was last seen alive. The fact that the BMW was found abandoned in Tennessee, the same state where respondent was located after his stay in Savannah, raises a suspicion of guilt [3] but is not evidence that respondent killed Dr. Cox. Further, there is no evidence respondent was at the scene of the crime, which according to the State's theory was in Colleton County. *See State v. Martin,* 340 S.C. 597, 533 S.E.2d 572 (2000); *State v. Schrock,* 283 S.C. 129, 322 S.E.2d 450 (1984) (directed verdict should have been granted where there was no substantial evidence establishing defendant's presence at scene of murder). Accordingly, the Court of Appeals properly reversed the denial of a directed verdict of acquittal.

**AFFIRMED.**

WALLER and PLEICONES, JJ., concur.

TOAL, C.J., dissenting in a separate opinion in which BURNETT, J., concurs.

Chief Justice TOAL:

I respectfully dissent. In my view, the State presented sufficient evidence to warrant the trial judge's denial of respondent's motion for a directed verdict of acquittal.

The events in this case occurred within a few days. The victim was found dead on June 21 in Colleton County, off an access road that had rough terrain and overgrown brush. The coroner estimated that the victim had been murdered on June

---

**3.** We note there is no evidence in the record establishing the distance between respondent's father's home and the site where the BMW was found. Rand McNally's Road Atlas indicates Gray, Tennessee, is about ten miles from Johnson City, Tennessee.

18. Just days before the murder, on June 14–15, respondent and the victim met for the first time, in Savannah, and the two had sex. Respondent was in town visiting Bobby Ray Ware, a truck driver who had a sexual relationship with the victim for over a year. According to Ware, Respondent was carrying a gun.

Ware left town for Chicago on the morning of June 17. Respondent stayed behind at Ware's residence. The next morning, June 18, the victim borrowed a nearly new BMW from one of his colleagues. He withdrew $300 from an ATM in Hardeeville, near Colleton County. Later, the victim was murdered by gunshot. When his body was found, he was still wearing a watch and a gold ring, but his wallet and cash were missing.

On June 19, the very next day, respondent left Ware a phone message, asking Ware to call him in Tennessee. On June 20, the BMW was found in Tennessee, near respondent's father's home. The lead investigator reported that the exterior of the BMW had scratches on it, "like it had been [driven] down something rough." Respondent's thumbprint was found on a coffee cup lid left in the car.

Given the short timeframe within which these events occurred; the sexual relationship between the victim and respondent; the thumbprint evidence in the borrowed BMW; the scratches on the car; and the location of the abandoned car in Tennessee, near the place respondent was staying, there was enough evidence, in my view, from which respondent's guilt could be fairly and logically deduced.[4] *See State v. Mitchell,* 341 S.C. 406, 409, 535 S.E.2d 126, 127 (2000) (the trial judge must submit the case to the jury if there is "*any substantial evidence* which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced").

---

4. It is also my view that had this case been submitted to the jury, respondent would have been entitled to the traditional circumstantial evidence charge as described in *State v. Edwards,* 298 S.C. 272, 379 S.E.2d 888, *cert. denied,* 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed.2d 196 (1989).

Therefore, in my view, the court of appeals erred in reversing respondent's conviction.

BURNETT, J., concurs.