The People of the State of Illinois, Plaintiff-Appellee, v. Charles E. Chambliss, Defendant-Appellant.

Gen. No. 50,529.

First District, First Division.

April 11, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and

James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. Roger Horsky, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, Charles E. Chambliss, was found guilty of robbery of one Michael Regilio on September 18, 1964, and guilty of theft from one Sol Regilio on September 22, 1964, in a combined bench trial. He was sentenced to the penitentiary for two years on the robbery charge. He was given probation, the first six months to be served in the county jail, on the theft charge. The sentences were to run concurrently.

In this appeal, defendant seeks reversal claiming that the story of each offense was improbable, and the state's evidence inadequate to prove the crimes were committed or that defendant committed either of them.

Michael Regilio testified that in the early morning of September 18, 1964, he left the Jackpot Tavern on West Madison Street in Chicago, and when about four or five feet out of the tavern he felt somebody take his wallet out of his pocket. "They" also took thirty dollars from his front pocket. He chased a man, whom he identified as the defendant, five or six feet, threw a punch at him and the man turned around to punch back and missed. Somebody grabbed Regilio from behind. He fell and sustained a leg fracture. Defendant, with the wallet in his hand, continued to walk some "two doors away from this tavern." Regilio pleaded with him for the return of the wallet because it contained some personal papers. Defendant took his time looking through it, then came over "and I looked at him and

461

he threw the wallet at me." Regilio lay on the walk until the police arrived and removed him to a hospital where he had a cast put on his broken leg. He remained at the hospital for some time, and three or four days after the occurrence he identified a photo of the defendant. He said his brother, Sol Regilio, did visit him at the hospital and was told the "story."

On cross-examination, Regilio testified that he had never seen defendant before the incident; that at that time it was dark and defendant wore a dark shirt and dark trousers; that he did not know who caused him to fall because he "couldn't see behind" as he was facing the defendant; that at the hospital he described to the police the person who took the wallet as having high cheekbones, straight firm nose and that the man was about his height and weight.

Sol Regilio testified that he had a conversation with his brother Michael at the hospital. A couple of days later he went to the Jackpot Tavern and conversed with Pete the owner. He then began an inquiry for Chug-o-lug, a name by which defendant was known along Madison Street. After a night and a morning of searching he learned that Chug-o-lug was jailed at the Monroe Street police station for being drunk. At the station Sol was told that defendant was on the work detail and would soon be released. When defendant came out, Sol told him he was sent by Big Bill, defendant's friend, "to come and get you out." He also informed defendant that they had to meet Big Bill that morning. Sol further testified that they drove to a tavern on Clark Street where "I told him, 'say, this fellow that you jackrolled and broke his leg,' I says, 'say I talked to Big Bill and he says this guy had money, he knew he was a drunk, what did you do with the money?' He says, 'I gave it to Big Bill' he told me." They then went to another tavern. Sol bought a few drinks and put six dollars change into his right-hand pocket, the side on which defendant was

sitting. He pretended being tired and sleepy, putting his head on the bar. A few minutes later he felt defendant's hand in his pocket and saw him taking out the six dollars. That was what he was waiting for. He traded punches with the defendant got him outside and had the police summoned. When the police came, defendant, who had been "out cold for about a minute or so" got up and was sitting on the fender of a parked car, with the money still in his hand.

Sergeant Paul Lacalamita testified that he was on duty during the morning hours of September 22, 1964, patrolling Clark Street. His attention was called by an unkown passerby to a fight on the street. He proceeded to 642 Clark Street and observed Sol and the defendant in front of the tavern. Defendant was sitting "on a car" with blood on his face. He was cut above the eyes and Sol was standing next to him. He reached into defendant's pocket and found six single dollars.

On cross-examination he said he knew Sol for two and a half or three years as a bartender in several spots in the Clark Street District. Defendant was bleeding from one eye, the mouth and the nose, and was taken to the hospital.

Defendant testified that Sol approached him at the police station while he was on a work detail and was at that time mopping the floor. After Sol told him Big Bill sent him to get him out, defendant told Sol he wasn't due to get out until about 12 o'clock noon and turned back to his mopping. Sol then gave the "turnkey" a five or ten dollar bill and defendant was let out. Sol told him that they were going to see Bill on the North side. They drove to Clark and Erie and entered the Shamrock tavern. After consuming a couple of drinks, defendant asked where Bill was. Sol appeared nervous and said Bill would be there shortly. When defendant became impatient and indicated that he would leave, Sol took him next door to another lounge and a

463

little later to a third tavern. When defendant came back to the bar after making a phone call at the third tavern, Sol turned sideways toward the defendant. Defendant noticed Sol put his hand into his pocket, come out with some money, and turn to the bartender and say, "Say, did you see him go in my pocket and take out this money?" The bartender shook his head indicating in the affirmative. Sol then struck defendant in the head, he went down, and was struck with a bar stool sustaining a fracture of his right cheekbone. He was kicked in the ribs and beaten so that he had to have four sutures to his head and eight above his right eye. Since then his face is paralyzed. Defendant said he struggled to get loose and stumbled a short distance out of the tavern where he collapsed. A police car coming down the street spotted him and came over "real quick." Defendant denied taking the money from Sol on September 22 and robbing Michael on September 18. He did not remember where he went or what he did on the latter day.

■ ■ Defendant argues that the proof fails to indicate any use of force or threat of imminent use of force regarding the charge of robbery, which is an essential element of the crime as defined in the Criminal Code.

Ill Rev Stats, ch 38, sec 18–1 (1963) provides that:

a) A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force.

This section of the new Criminal Code codified the previous law in Illinois on robbery and no change was intended. "Threatening the imminent use of force" was substituted for "intimidation" (which was used in the old statute, ch 38 sec 501) as more accurately reflecting this element of the offense as stated by the court

464

in People v. Bodkin, 304 Ill 124, 136 NE 494 (1922). See Committee Comments, Smith-Hurd's Annotated Stats, ch 38, sec 18–1.

In the disposition of this issue, it is therefore entirely proper to apply decisions and authorities rendered prior to the effective date of the new Criminal Code.

In the case of People v. Williams, 23 Ill2d 295, 301, 178 NE2d 372 (1961), relied upon by the defendant, the court held that:

> With respect to defendant's conviction of robbery, that crime is defined in our [old] statute as the felonious and violent taking of money or property from the person of another by force and intimidation. (Ill Rev Stats 1957, ch 38, par 501). The gist of that offense is the force and intimidation used in the taking from the person against his will (People v. Cassidy, 394 Ill 245); and *the degree of force necessary to constitute robbery must be such that the power of the owner to retain his property is overcome, either by actual violence physically applied,* or by putting him in such fear as to overpower his will. (Hall v. People, 171 Ill 540; People v. Ryan, 239 Ill 410; Steward v. People, 224 Ill 434.) . . . [Emphasis added.]

and in People v. Campbell, 234 Ill 391, 84 NE 1035 (1908) the court, on page 393, said:

> The difference between stealing from the person of another, and robbery, lies in the force or intimidation used. (Hall v. People, 171 Ill 540.) In the absence of active opposition, if the article is so attached to the person or clothes as to create resistance, however slight, or *if there be a struggle to keep it, the taking is robbery.* (2 Bishop on New Crim Law, sec 1167; 1 Wharton on Crim Law 9 ed sec 854.) [Emphasis ours.]

The manner by which the property was taken from the person of Michael Regilio is commonly referred to as "snatching." 77 Corpus Juris Secundum, Robbery, § 17, contains a study of this subject in relation to the offense of robbery and concludes as follows:

> There is a conflict in the cases decided under the common law, and statutes substantially similar with respect to the element of force or intimidation, as to whether mere snatching of property constitutes robbery. According to one view such snatching, without further indication of violence, is robbery. Other authority, however, holds that mere snaching [sic] is not robbery, as where the property is snached [sic] so quickly as to allow no time for resistance. Irrespective of these conflicting views, the authorities unite in condemning snatching as robbery where there is concurrent intimidation, or actual violence in excess of mere snatching, as where the force used in snatching is so great as to knock the victim down, or where a physical struggle or blow accompanies the snatching. . . .

Again, in the 46 Am Jur, Robbery, sec 21, the following appears:

> The authorities are agreed that a sudden taking or snatching may be accompanied by sufficient force to constitute robbery. Thus, if a struggle immediately ensues to keep possession of the property and the thief overcomes the resistance . . . the violence is sufficient to constitute the act a robbery.

In the instant case, the taking of the property from Michael Regilio's person, his attempt to recover the property taken, instinctively seeking to apprehend the thief, and his being knocked to the sidewalk, sustaining a broken leg, were a continuous series of events constituting a single incident or occurrence. "The defense

466

of felonious possession which is challenged immediately upon the forcible taking is a part of the plan of robbery, or, as the books express it, it is res gestae of the crime." People v. Young, 214 Cal App2d 641, 29 Cal Reptr 595, 599 (1963); and see People v. Phillips, 201 Cal App2d 383, 19 Cal Reptr 839 (1962). In Phillips, although the sole force and fear employed by the robber was used in an effort to escape, it was held that that was an integral part of the robbery and enough to make the penal statute applicable.* Defendant cannot deny that the victim had the lawful right to seek recovery of his property or that the attack upon him by someone from behind was not the result of a concerted action involving an accomplice, thereby imputing such conduct to him. In our opinion the evidence adduced at the trial regarding the events of September 18 adequately proved the essential elements necessary to constitute the crime of robbery.

■ ■ Defendant further contends that he was not identified as the perpetrator of the robbery beyond a reasonable doubt. Michael Regilio testified that he observed the robber as he turned to throw a punch at him; watched him slowly walk a short distance away and leisurely look through the wallet as Regilio pleaded for its return, and that he saw the thief walk back and throw the wallet at him. He identified the defendant from a photograph shown him at the hospital and gave a detailed description of the defendant to the police. Evidently the description fitted the defendant at the trial as he does not contend otherwise in this matter. Where a conviction is based upon an identification by a single witness, whom the court in a bench trial believes positive and credible, a reviewing court will not reverse

---

* California Penal Code, sec 211, defines robbery as: . . . the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.

or substitute its own judgment even though the accused denies the charge. People v. Miller, 30 Ill2d 110, 195 NE2d 694 (1964); People v. Solomon, 24 Ill2d 586, 182 NE2d 736 (1962); People v. Pride, 16 Ill2d 82, 156 NE 2d 551 (1959).

 In considering the judgment of conviction for theft allegedly committed against Sol Regilio on September 22, we are convinced that the circumstances which supposedly established the charge were so improbable that they give rise to a reasonable doubt that the theft occurred. It appears to us to be more of an endeavor on the part of Sol Regilio to seek retribution for a previous injury committed upon his brother; a stalking of the accused and a desire for revenge. The conviction of the theft cannot stand based upon such facts and circumstances as appear in this record.

 Where the evidence of the prosecution is improbable, unconvincing and contrary to human experience, we do not hesitate to reverse a judgment of conviction. People v. Coulson, 13 Ill2d 290, 149 NE2d 96 (1958); People v. Dawson, 22 Ill2d 260, 174 NE2d 817 (1961); People v. Reese, 34 Ill2d 77, 213 NE2d 526 (1965).

The conviction of the crime of robbery charged as committed against Michael Regilio on September 18, 1964, is therefore affirmed, and the conviction for theft charged as committed against Sol Regilio on September 22, 1964 is reversed.

Affirmed in part, reversed in part.

BURMAN and MURPHY, JJ., concur.