649 S.E.2d 84

**The STATE, Respondent,**

v.

**Larry Gene MOORE, Appellant.**

**No. 4247.**

Court of Appeals of South Carolina.

Submitted May 1, 2007.
Decided May 18, 2007.
Rehearing Denied Aug. 24, 2007.

470

Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

ANDERSON, J.

Larry Gene Moore appeals his conviction of armed robbery. He argues the evidence does not show he used force or intimidation in his asportation of stolen property. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

On January 17, 2004, Mark Hayes, a loss prevention officer at a Wal–Mart store in Spartanburg, was on duty when he observed a shopper, Larry Gene Moore, exhibiting suspicious behavior. Only minutes earlier, Hayes noticed the customer had placed several items of merchandise in his shopping cart, and thus became alarmed when he realized Moore's cart was presently vacuous. Hayes witnessed Moore pick up a package of over-the-counter medication from the shelf, place it inside his jacket, and begin walking toward the door.

Hayes approached Moore shortly. after he stepped outside onto the store's sidewalk. After identifying himself and his position with Wal–Mart, Hayes informed Moore he needed to speak with him regarding some unpaid merchandise. During

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

the time Hayes was talking, Moore began digging around in his back pocket. At first, Hayes believed Moore might be looking for a receipt. However, when Moore stated, "What this, are you sure," Hayes looked down at Moore's hand to discover the thief was brandishing a semiautomatic .22 caliber handgun.

Fearing for his own safety and that of Wal–Mart's customers, Hayes immediately ended the encounter and went back into the building to make certain the police were apprised of the situation. Moore walked off of Wal–Mart's premises but was apprehended by police a short time later. $454.60 in unpaid Wal–Mart merchandise was recovered from Moore's possession.

Moore was charged with armed robbery. At the close of the State's case, he moved for a directed verdict and requested the charge be lowered to petty larceny. Moore argued, *inter alia,* that armed robbery could not be proven because asportation of the property occurred before the confrontation and no force or threat of force was used to take the merchandise. After extensive arguments, the trial judge denied the motion for a directed verdict, finding the offense of armed robbery requires asportation, which includes the escape. It was during the commission of the crime that Moore threatened use of the weapon. At the close of the evidence, Moore renewed his directed verdict motion. The motion was denied. Moore was convicted of armed robbery and sentenced to fifteen years.

### STANDARD OF REVIEW

In criminal cases, an appellate court sits to review errors of law only. *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006); *State v. Douglas,* 367 S.C. 498, 506, 626 S.E.2d 59, 63 (Ct.App.2006) *cert. pending; State v. Wood,* 362 S.C. 520, 525, 608 S.E.2d 435, 438 (Ct.App.2004). Thus, an appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum,* 338 S.C. 441, 527 S.E.2d 105 (2000); *State v. Patterson,* 367 S.C. 219, 625 S.E.2d 239 (Ct.App.2006); *State v. Landis,* 362 S.C. 97, 101, 606 S.E.2d 503, 504 (Ct.App.2004). This Court does not re-evaluate the facts based on its own view of the prepon-

derance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence. *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001); *State v. Mattison,* 352 S.C. 577, 575 S.E.2d 852 (Ct.App.2003).

■■■■ "The appellate court may reverse the trial judge's denial of a motion for a directed verdict only if there is no evidence to support the judge's ruling." *State v. Zeigler,* 364 S.C. 94, 103, 610 S.E.2d 859, 863 (Ct.App.2005) (citing *State v. Gaster,* 349 S.C. 545, 564 S.E.2d 87 (2002)). On appeal, we are limited to determining whether the trial judge abused his discretion. *State v. Reed,* 332 S.C. 35, 503 S.E.2d 747 (1998); *Douglas,* 367 S.C. at 506, 626 S.E.2d at 63; *State v. Walker,* 366 S.C. 643, 623 S.E.2d 122 (Ct.App.2005). An abuse of discretion occurs when a ruling is based on an error of law or a factual conclusion that is without evidentiary support. *Fields v. Regional Med. Ctr. Orangeburg,* 363 S.C. 19, 609 S.E.2d 506 (2005); *Renney v. Dobbs House, Inc.,* 275 S.C. 562, 274 S.E.2d 290 (1981); *see also Simon v. Flowers,* 231 S.C. 545, 550, 99 S.E.2d 391, 393–94 (1957) (" '[E]rror at law' exists: (1) when the circuit judge, in issuing [the order], was controlled by some error of law ... or (2) where the order, based upon factual, as distinguished from legal, considerations, is without adequate evidentiary support."); *McSween v. Windham,* 77 S.C. 223, 226, 57 S.E. 847, 848 (1907) ("[T]he determination of the court will not be interfered with, unless there is an abuse of discretion, or unless the exercise of discretion was controlled by some error of law.").

■■■■ When ruling on a motion for a directed verdict, the trial judge is concerned with the existence or nonexistence of evidence, not its weight. *State v. Weston,* 367 S.C. 279, 625 S.E.2d 641 (2006); *Sellers v. State,* 362 S.C. 182, 607 S.E.2d 82 (2005); *State v. Cherry,* 361 S.C. 588, 606 S.E.2d 475 (2004); *State v. Rosemond,* 356 S.C. 426, 430, 589 S.E.2d 757, 758–59 (2003); *State v. McHoney,* 344 S.C. 85, 544 S.E.2d 30 (2001). A case should be submitted to the jury if there is any direct evidence or any substantial circumstantial evidence that reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Walker,* 349 S.C. 49, 562 S.E.2d 313 (2002); *State v. Buckmon,* 347 S.C. 316, 555 S.E.2d 402 (2001); *State v. Al–Amin,* 353 S.C. 405,

411, 578 S.E.2d 32, 35 (Ct.App.2003); *see also State v. Martin,* 340 S.C. 597, 533 S.E.2d 572 (2000) (stating where the evidence is circumstantial, a trial court has the duty to submit a case to jury so long as there is substantial circumstantial evidence that reasonably tends to prove guilt of accused or from which his guilt may be fairly and logically deduced). "[I]n ruling on a motion for directed verdict, the trial court must view the evidence in the light most favorable to the State." *State v. Prince,* 316 S.C. 57, 64, 447 S.E.2d 177, 181–82 (1993).

A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. McKnight,* 352 S.C. 635, 642, 576 S.E.2d 168, 171 (2003); *State v. Rothschild,* 351 S.C. 238, 243, 569 S.E.2d 346, 348 (2002); *State v. Padgett,* 354 S.C. 268, 580 S.E.2d 159 (Ct.App.2003); *State v. Wilds,* 355 S.C. 269, 274, 584 S.E.2d 138, 141 (Ct.App.2003). The trial court should grant a directed verdict motion when the evidence merely raises a suspicion that the accused is guilty. *State v. Arnold,* 361 S.C. 386, 605 S.E.2d 529 (2004); *State v. Schrock,* 283 S.C. 129, 132, 322 S.E.2d 450, 452 (1984); *State v. Horne,* 324 S.C. 372, 379, 478 S.E.2d 289, 293 (Ct.App.1996). "Suspicion" implies a belief or opinion as to guilt that is based upon facts or circumstances that do not amount to proof. *Cherry,* 361 S.C. at 594, 606 S.E.2d at 478; *State v. Lollis,* 343 S.C. 580, 541 S.E.2d 254 (2001); *Zeigler* 364 S.C. at 103, 610 S.E.2d at 863. A trial judge is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypotheses. *Cherry,* 361 S.C. at 594, 606 S.E.2d at 478; *State v. Ballenger,* 322 S.C. 196, 470 S.E.2d 851 (1996).

On appeal from the denial of a directed verdict in a criminal case, an appellate court must view the evidence and all reasonable inferences in the light most favorable to the State. *State v. Curtis,* 356 S.C. 622, 591 S.E.2d 600 (2004); *State v. Wilds,* 355 S.C. at 274, 584 S.E.2d at 141; *State v. Morgan,* 352 S.C. 359, 364, 574 S.E.2d 203, 205 (Ct.App.2002). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must find the case was properly submitted to the jury. *State v. Harris,* 351 S.C. 643, 653, 572 S.E.2d 267,

273 (2002); *State v. Condrey,* 349 S.C. 184, 190, 562 S.E.2d 320, 323 (Ct.App.2002); *State v. Patterson,* 337 S.C. 215, 232, 522 S.E.2d 845, 853 (Ct.App.1999).

### *LAW/ANALYSIS*

Moore argues the trial court erred in refusing to direct a verdict of acquittal on the charge of armed robbery. He alleges the charge of armed robbery was improper because the evidence does not show he used force or intimidation to take Wal–Mart's merchandise, but only to retain the property and escape. We disagree.

### 1. THE LAW EXTANT AS TO ARMED ROBBERY

■ Armed robbery occurs when a person commits robbery while either armed with a deadly weapon or alleging to be armed by the representation of a deadly weapon. S.C.Code Ann. § 16–11–330 (2003); *see also State v. Al–Amin,* 353 S.C. 405, 424, 578 S.E.2d 32, 42 (Ct.App.2003) ("Armed robbery occurs when a person commits robbery either while armed with a deadly weapon or while the person was alleging he was armed and was using a representation of a deadly weapon."). Included in armed robbery is the lesser included offense of robbery. *State v. Scipio,* 283 S.C. 124, 125–126, 322 S.E.2d 15, 16 (1984). Our statutory scheme specifies that the definition of robbery is to be provided by South Carolina's common law. *See* S.C.Code Ann. § 16–11–325 (2003) (stating: "The common law offense of robbery is a felony. Upon conviction, a person must be imprisoned not more than fifteen years."); *see also Al–Amin,* 353 S.C. at 424, 578 S.E.2d at 42 ("Our statutory scheme provides that the crime of robbery is defined by the common law.").

■ "Robbery is defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear." *Al–Amin,* 353 S.C. at 424, 578 S.E.2d at 42 (citing *State v. Parker,* 351 S.C. 567, 571 S.E.2d 288 (2002); *Joseph v. State,* 351 S.C. 551, 571 S.E.2d 280 (2002)). Our supreme court has described robbery as "the felonious taking and carrying away of goods of another against the will or without consent." *State v. Scipio,* 283 S.C.

124, 126, 322 S.E.2d 15, 16 (1984). "The gravamen of a robbery charge is a taking from the person or immediate presence of another by violence or intimidation." *State v. Rosemond,* 356 S.C. 426, 430, 589 S.E.2d 757, 758–59 (2003) (citing *State v. Hiott,* 276 S.C. 72, 276 S.E.2d 163 (1981)). "When determining whether the robbery was committed with intimidation, the trial court should determine whether an ordinary, reasonable person in the victim's position would feel a threat of bodily harm from the perpetrator's acts." *Rosemond,* 356 S.C. at 430, 589 S.E.2d at 759.

 The elements of robbery and armed robbery include asportation of the property. *State v. Keith,* 283 S.C. 597, 598, 325 S.E.2d 325, 326 (1985).

 "The common-law offense of robbery is essentially the commission of larceny with force." *State v. Brown,* 274 S.C. 48, 49, 260 S.E.2d 719, 720 (1979). "In common parlance[,] larceny is just plain stealing." *State v. Roof,* 196 S.C. 204, 209, 12 S.E.2d 705, 707 (1941); *see also Gill v. Ruggles,* 95 S.C. 90, 78 S.E. 536 (1913) (noting that "stealing" is the popular word for the technical word "larceny"). Larceny is the felonious taking and carrying away of the goods of another against the owner's will or without his consent. *Al–Amin,* 353 S.C. at 424, 578 S.E.2d at 42 (citing *Broom v. State,* 351 S.C. 219, 569 S.E.2d 336 (2002); *State v. Condrey,* 349 S.C. 184, 562 S.E.2d 320 (Ct.App.2002)). Larceny is a lesser-included offense of the crime of armed robbery. *See State v. Parker,* 351 S.C. at 570–71, 571 S.E.2d at 290 ("Larceny has been found to be a lesser-included offense of robbery by this Court on several occasions."); *State v. Austin,* 299 S.C. 456, 385 S.E.2d 830 (1989) (petit larceny is a lesser-included of strong armed robbery); *State v. Harkness,* 288 S.C. 136, 341 S.E.2d 631 (1986) (petit larceny is a lesser included offense of robbery). "Larceny is also implicit within the crime of shoplifting." *Al–Amin,* 353 S.C. 405, 424, 578 S.E.2d 32, 42; *see also* S.C.Code Ann. § 16–13–110 (2003) (defining the offense of shoplifting).

 Thus, it is the use or alleged use of a deadly weapon that distinguishes armed robbery from robbery, and the employment of force or threat of force that differentiates a robbery from a larceny. *See Scipio* 283 S.C. at 126, 322 S.E.2d at 16 (the additional element of being armed with a

deadly weapon distinguishes robbery and armed robbery); *Brown*, 274 S.C. at 49, 260 S.E.2d at 720 (adding force to larceny creates the common-law offense of robbery).

## 2. THE CONTINUOUS OFFENSE THEORY

*State v. Keith*, 283 S.C. 597, 325 S.E.2d 325 (1985), is edifying. In *Keith*, although unarmed at the time the confrontation began, the defendant accosted a man walking along a public street. After rifling through the victim's pockets and taking the cash from his wallet, the defendant found the victim's pocketknife and stabbed the man repeatedly. The assailant was convicted of armed robbery and on appeal contended the conviction was improper because he did not become armed until after having taken the victim's money. The South Carolina Supreme Court disagreed:

> [W]e hold that when a defendant commits robbery without a deadly weapon, but becomes armed with a deadly weapon before asportation of the victim's property, a conviction for armed robbery will stand. "[T]he robber need not be armed at all times during the robbery in order to be guilty of (armed robbery). [H]e is guilty . . . if he arms himself or becomes armed with a deadly weapon at any time during the progress of the taking or while the robbery is being perpetrated . . . **[T]he crime of robbery is not completed the moment the stolen property is in the possession of the robbers, but may be deemed to continue during their attempt to escape."** 77 C.J.S. *Robbery*, § 25 (1952). *See also, State v. Bridges*, 444 So.2d 721 (La.App.1984); *People v. Heller*, 131 Ill.App.2d 799, 267 N.E.2d 685 (1971).

*Id.*, 283 S.C. at 598–99, 325 S.E.2d at 326 (emphasis added) (ellipses and parenthesis in the original).

 *Keith* pellucidly adopts the "continuous offense theory." In the context of robbery, the continuous offense theory provides that the crime has occurred "not only if the perpetrator uses force or intimidation to 'take' possession of the property, but also if force or intimidation is used to retain possession immediately after the taking, or to carry away the property, or to facilitate escape." *State v. Meyers*, 620 So.2d 1160, 1163 (La.1993) (citing Charles E. Torcia, 4 *Wharton's Criminal Law* § 478 (14th ed.1981)); *see also People v. Ran-*

*dolph,* 466 Mich. 532, 648 N.W.2d 164 (2002) (explaining what it referred to as "the transactional approach" as follows: "Under this approach, a defendant has not completed a robbery until he has escaped with stolen merchandise. Thus a completed larceny may be elevated to a robbery if the defendant uses force after the taking and before reaching temporary safety.").

American Jurisprudence elucidates:

The other basic perspective is that the use of force or intimidation in retaining the property generally, or in effecting retention of the property in an escape attempt, or even merely as a means of escaping after the property has been abandoned supply the element of force or intimidation necessary to make the offense a robbery.

67 Am.Jur.2d *Robbery* § 27 (2003) (internal footnotes omitted).

The Model Penal Code espouses the theory, focusing on whether the force or intimidation asserted against the victim is part of the entire act, and includes the use of force or intimidation to retain possession of the thing taken or to escape or prevent pursuit. Model Penal Code § 222.1(1) (2001). The code has adopted the position that a robbery occurs if the force or intimidation takes place "in the course of committing a theft" and specifies that the commission of a theft includes the flight after the attempt or commission. *Id.*

The efficacy of the rule is to distinguish the perpetration of a robbery from the commission of a larceny and a subsequent assault, limiting the latter to cases where the intimidation or force is not directly related to the taking. The rationale behind the differentiation of robbery and larceny buttresses the adoption of the continuous offense approach:

[T]he purpose of the force or intimidation element of the crime of robbery is to distinguish, by imposition of a more severe penalty, those takings which pose a greater risk to the victim. The danger to the victim, however, is identical whether the force or intimidation is employed against the victim immediately before or immediately after the actual taking. We therefore conclude that the force or intimidation element of robbery is satisfied by evidence that force

or intimidation directly related to the taking occurred in the course of completing the crime.

*State v. Meyers,* 620 So.2d 1160, 1163 (La.1993).

In instances when a thief must use force to retain the stolen property, the thief does not acquire full possession of the property until the force or threat of force has overcome the custodian's resistance to the taking. *See Wharton's Criminal Law* § 463, at 39–40 (15th ed.1996). Thus, a "taking" is not complete—that is to say, has not come to an end—until the perpetrator has neutralized any immediate interference with his or her possession. *Id.* This does not mean, of course, that a thief has not committed a robbery or larceny unless and until resistance to his possession has been overcome. Indubitably, the point of asportation is not absolutely determinative. A criminal is guilty of the crime, and not merely of an attempt, if he moves the stolen goods a short distance, and concomitantly, the crime is ongoing until the thief has reached a place of temporary safety. *See Ball v. State,* 347 Md. 156, 699 A.2d 1170, 1185 (1997).

An exhaustive review of the relevant authorities reveals plenitudinous jurisdictions adopting the continuous offense theory by statute. *See, e.g.,* Ala.Code § 13A–8–43 (LexisNexis 2005); Alaska Stat. § 11.41.510 (2006); Ariz.Rev.Stat. Ann. §§ 13–1901 to –1902 (2001); Ark.Code Ann. § 5–12–102 (2005); Conn. Gen. Stat. Ann. § 53a–133 (West 2001); Del.Code Ann. tit. 11, § 831 (2001); Fla. Stat. Ann. § 812.13 (West 2006); Haw.Rev. Stat. Ann. §§ 708–841 to –842 (LexisNexis Supp.2006); Iowa Code Ann. § 711.1 (West 2003); Ky.Rev.Stat. Ann. §§ 515.020 to .030 (LexisNexis 1999); Me.Rev.Stat. Ann. tit. 17–A, § 651 (2006); Minn.Stat. Ann. § 609.24 (West 2003); Mont.Code Ann. § 45–5–401 (2005); Nev.Rev.Stat. Ann. § 200.380 (Lexis-Nexis 2006); N.H.Rev.Stat. Ann. § 636.1 (1996); N.J. Stat. Ann. § 2C:15–1 (West 2005); N.Y. Penal Law § 160.00 (McKinney 1999); N.D. Cent.Code § 12.1–22–01 (1997); Ohio Rev.Code Ann. § 2911.02 (LexisNexis 2006); Okla. Stat. Ann. tit. 21, §§ 791 to 792 (West 2002); Or.Rev.Stat. Ann. § 164.395 (West 2005); Pa. Cons.Stat. Ann. § 3701 (West 2000); S.D. Codified Laws §§ 22–30–1 to –2 (LexisNexis 1998); Tex. Penal Code Ann. § 29.01 to .02 (Vernon 2003); Utah Code Ann. § 76–6–301 (Supp.2006); Wash. Rev.Code Ann. § 9A.56.190 (West 2000); Wyo. Stat. Ann. § 6–2–401 (2005).

Multitudinous states have, by judicial fiat, embraced the theory. *See, e.g., People v. Chambliss,* 69 Ill.App.2d 459, 217 N.E.2d 422 (1966) ("if a struggle immediately ensues to keep possession of the property and the thief overcomes the resistance * * * the violence is sufficient to constitute an act of robbery."); *People v. Kennedy,* 10 Ill.App.3d 519, 294 N.E.2d 788 (1973) ("while the taking may be without force, the offense is robbery if the departure with the property is accomplished by the use of force."); *People v. Estes,* 147 Cal.App.3d 23, 194 Cal.Rptr. 909 (1983) ("The crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety. It is sufficient to support the conviction that appellant used force to prevent the guard from retaking the property and to facilitate his escape.... Whether defendant used force to gain original possession of the property or to resist attempts to retake the stolen property, force was applied against the guard in furtherance of the robbery and can properly be used to sustain the conviction."); *State v. Bell,* 194 Neb. 554, 233 N.W.2d 920 (1975) ("a robbery is not completed at the moment the robber obtains possession of the stolen property ... robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property."); *State v. Meyers,* 620 So.2d 1160, 1163 (La.1993) ("the force or intimidation element of robbery is satisfied by evidence that force or intimidation directly related to the taking occurred in the course of completing the crime."); *Ball v. State,* 347 Md. 156, 699 A.2d 1170 (1997) ("The mere fact that some asportation has occurred before the use of force does not mean that the perpetrator is thereafter not guilty of the offense of robbery.... [When] the use of force enables the accused to retain possession of the property in the face of immediate resistance from the victim, then the taking is properly considered a robbery."); *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983) ("The gravamen of robbery is the application of physical force or intimidation against the victim at any time during the course of a transaction culminating in the taking of property from the victim's person or presence. There is no requirement that the application of force or intimidation must be virtually contemporaneous with the taking."); *Commonwealth. v. Rajotte,* 23 Mass.

App.Ct. 93, 499 N.E.2d 312 (1986) ("A larceny may be converted into a robbery if ... an assault is committed on a person who, having some protective concern for the goods taken interferes with the completion of the theft.").

### 3. A TEMPORAL AND SPATIAL ANALYSIS OF THE EVIDENTIARY RECORD

Citing the Tennessee case of *State v. Owens*, 20 S.W.3d 634 (Tenn.2000), Moore urges this court to hold that robbery requires the act of violence or intimidation "precede or be concomitant to or contemporaneous with the taking of the property." *See also State v. Hope*, 317 N.C. 302, 345 S.E.2d 361, 364 (1986) ("to be found guilty of armed robbery, the defendant's use or threatened use of a dangerous weapon must precede or be concomitant with the taking, or be so joined with it in a continuous transaction by time and circumstances as to be inseparable.").

A priori the reasoning and analysis in *Owens* is bottomed and premised upon the minority view in this country. *Owens* plucks its rationale from a flawed and defective academic exercise. The minority view does not give any credence to the criminal activity in totality. Rather, the minority rule restricts and insulates the criminal activity to the zone of coinstantaneous and synchronous conduct.

In contrariety to Moore's contention, the crime was not "complete" prior to his confrontation with Hayes. Hayes confronted Moore immediately after he walked out the front doors of the store but before he left the retailer's parking lot. If not for Moore's display of a handgun, Hayes would likely have been able to thwart the thief at that time. However, while still standing on Wal–Mart's grounds, Moore employed the weapon to threaten Hayes with force and create fear. The gun allowed Moore to actually remove the merchandise from Wal–Mart's domain. Perspicuously, the threat of weapon was contemporaneous to and not separable with his taking of the goods from the premises of the merchant.

Simplistically put, the requisite elements of larceny are met at the point when a thief possesses an item of stolen property. *See State v. Keith*, 283 S.C. 597, 598, 325 S.E.2d 325, 326 (1985) ("asportation is an element of robbery and armed robbery."). However, Moore's crime continued as he attempt-

ed his escape through the Wal–Mart parking lot, where his threat to Hayes raised the offense from larceny to armed robbery. *See Burko v. State,* 19 Md.App. 645, 313 A.2d 864, 871 (1974) *vacated on other grounds,* 422 U.S. 1003, 95 S.Ct. 2624, 45 L.Ed.2d 667 (1975) ("when one commits a larceny and then displays a weapon so as to overcome the resistance of the witness, the crime is then elevated to robbery") citing Clark and Marshall, *A Treatise on the Law of Crimes,* § 12.09 (6th ed. Wingersky rev.1958); Perkins, *Criminal Law,* ch. 4, § 2C at 284 (2d ed.1969). At the point he was escaping through Wal–Mart's parking lot, Moore's asportation of the stolen property was luculently within the ambit and aegis of the doctrine of asportation, an indispensable element of the offense of armed robbery. The striking similitude in the factual scenario depicted in *Keith* as juxtaposed to this factual record brings this court to the ineluctable conclusion that Moore committed the offense of armed robbery.

## CONCLUSION

We adopt the continuous offense theory based on the efficacy and rationale of the doctrine and our supreme court's decision in *State v. Keith,* 283 S.C. 597, 325 S.E.2d 325 (1985). Accordingly, the trial judge did not error in refusing to grant a directed verdict of acquittal. Appellant's conviction for armed robbery is

**AFFIRMED.**

HUFF and BEATTY, JJ., concur.