THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Jimmy Douglas
 Portee, Appellant.
 
 
 

Appeal From Richland County
G. Thomas Cooper, Jr., Circuit Court Judge
Unpublished Opinion No. 2010-UP-435
Submitted October 1, 2010  Filed October
 12, 2010
AFFIRMED

 
 
 
 Deputy Chief Appellate Defender Wanda H. Carter, of Columbia, for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,
 Assistant Attorney General Deborah R.J. Shupe, and Solicitor Warren B. Giese, all
 of Columbia, for Respondent.
 
 
 

PER
 CURIAM:  Appellant,
 Jimmy Douglas Portee, was convicted of armed robbery,
 failure to stop for a blue light, and two counts of assault and battery of a
 high and aggravated nature and was sentenced to concurrent terms of ten years
 on the assault charges, three years for the failure to stop, and life without
 parole for the armed robbery.  Portee appeals, asserting the trial judge
 erred in denying his motion for directed verdict on the armed robbery charge
 based upon the insufficiency of evidence of the presence of a deadly weapon or
 a representation of a deadly weapon.  We affirm.[1]
FACTUAL/PROCEDURAL
 BACKGROUND
On
 November 9, 2006, Family Dollar Store manager Tracey Anderson arrived at work
 between 7:30 and 7:45 a.m. to prepare the business for opening.  Around 8:00,
 she heard a loud noise that drew her attention to a man who appeared to be
 looking at the door for the store's hours of operation.  The man returned to
 his vehicle and left.  Tracey testified the man was a skinny, light-skinned
 African-American and she noticed the front end of an older, white, four-door
 car.  By the time of the store opening at 9:00, employees Erica Wilson and Lisa
 Ellis had arrived.  Shortly thereafter, while Tracey and Erica were in the
 stockroom, a man entered the area from the store's back door.  Tracey testified
 the man was very tall and he wore a knit hat over his face with the eyes cut
 out of it, and he had on a yellow coat.  The man pulled Tracey and Erica by the
 hair and moved them out of the stockroom and then forced them to the floor. 
 The man told Tracey she needed to give him the money.  Erica became hysterical
 and started screaming, at which time the man threatened to kill the women if
 they did not do as he said.  While the man used one hand to hold Tracey by her
 hair, she noticed a bulge in the right pocket of his yellow jacket, and she saw
 he had his other hand positioned "into his clothes."  At that point,
 having been threatened, Tracey believed the man was armed.   Erica was left on
 the floor, while the man nudged Tracey toward the front of the store, pulling
 her hair.  As they approached the front, Tracey saw Lisa and one of their
 regular customers, Joan Hooks.  The man instructed Joan to come with him and
 Tracey and led them to the cash registers.  Tracey bagged all the money from
 one of the registers and gave it to the man, who then ran out the back door. 
 During this time, she was able to observe the man wore gray sweatpants and
 white, scuffed shoes.  Shortly thereafter, Michael Murphy, a minister with the
 church beside the store, came in and asked if they had been robbed.  When
 Tracey told him they had, Michael ran to the back after the man, at which time
 he identified the car and stated the robber had pulled a pistol on him.  Tracey
 stated the man who robbed them had the same build as the person she had
 observed at 8:00 that morning. 
Sometime
 after the police arrived at the store, Tracey was taken to another location
 where she observed Portee, and identified him immediately as the person she had
 seen at the store at 8:00 that morning and the person who committed the robbery
 of the store around 9:00 or 9:15.  She recognized his face from the 8:00 a.m.
 encounter, and the pants and shoes he was wearing from the robbery.  She also
 testified a white car located near the suspect when she identified him was the
 same car she had seen earlier that morning in the parking lot.  Additionally,
 she identified a yellow jacket Portee dropped while running from the police as
 the jacket worn by the robber that day.  She also made an in-court
 identification of Portee.  
Customer
 Joan Hooks testified she was in the store on November 9, 2006 when she heard a
 loud ruckus in the back.  She then saw Tracey being held by the person robbing
 the store, who walked Tracey up to the front of the store by her hair.  The man
 yelled something to her and she walked up to the front with them.  Joan stated
 she was "not sure what type of weapon he had, but he was walking . . .
 [Tracey] up towards . . . the cash register."  The man used one hand to
 grab Tracey's hair and had the other hand inside his jogging pants, "like
 he had something in his pants."  The man asked Tracey to give him money
 out of the register and she complied.  After he obtained the money, the man ran
 out the back of the store.  The minister came in from the church next door and
 ran through the store following the robber.  The minister then described seeing
 the white car in the back of the store.  
The
 authorities were called and Deputy Kilcoyne responded to the scene.  After
 obtaining a description of the man, his clothing and the vehicle from the
 witnesses, Deputy Kilcoyne radioed in the information.  Kilcoyne testified
 Tracey advised him the man "had his hand in his pocket pointing it at her
 to indicate that he would have a weapon," and "she assumed he had a
 weapon." 
Investigator
 Unger testified he was on patrol in the area with a trainee at the time of the
 dispatch for an armed robbery.  He observed a car fitting the description being
 driven by a man and initiated a traffic stop, which turned into a high speed
 chase.  During the car pursuit, Unger observed the occupant throw something out
 of the car, and then noticed him fumbling around and picking up a yellow piece
 of clothing, later identified as a yellow jacket.  The driver eventually lost
 control of the vehicle and ran from the car.  As he jumped from the automobile,
 the man had two black items and a yellow item that were subsequently identified
 as a black mask, a black sock, and a yellow rain jacket.  After a foot chase,
 the officers apprehended the man.
The
 man dropped the yellow jacket while he was running.  Inside the vehicle,
 officers found rolled money and the black handle of a hacksaw.  In the right
 front pocket of the yellow rain jacket, officers found a blue cobalt utility
 knife.  Also collected was a black mask with eye holes.  Testing revealed DNA
 obtained from the mask matched that of Portee.  A sergeant in the armed robbery
 division of the Richland County Sheriff's Department testified he deemed the
 broken-off hacksaw handle to be an item fashioned to look like a firearm, and
 that such items are often used by persons who do not have access to a real
 firearm.  He stated any person in fear would think the hacksaw handle was a
 firearm and that the item inside a pocket of clothing would create a bulge.
At
 the close of the State's case, Portee moved for a directed verdict arguing, as
 to the armed robbery, the State failed to produce sufficient evidence the
 robber was armed or alleged to be armed.  The trial judge determined there was
 sufficient evidence from which the jury could determine the perpetrator was
 armed or a person could reasonably believe based on the threat that the
 perpetrator was armed with a deadly weapon or a representation of a deadly weapon. 
 He therefore denied the directed verdict motion as to armed robbery, but found
 it was an issue for the jury based upon the evidence presented.  He thereafter
 charged the lesser-included offense of robbery.
ISSUE
Whether
 the trial court erred in denying appellant's motion for directed verdict of the
 armed robbery charge because there was insufficient proof on the element of
 whether there was a deadly weapon present, or a representation of a deadly
 weapon present, in this case.
STANDARD OF REVIEW
"A
 defendant is entitled to a directed verdict when the State fails to present
 evidence of the offense charged."  State v. Heath, 370 S.C. 326,
 329, 635 S.E.2d 18, 19 (2006).  When ruling on a motion for directed verdict,
 the trial court is concerned with the existence or nonexistence of evidence,
 not its weight.  State v. Weston, 367 S.C. 279, 292, 625 S.E.2d 641, 648
 (2006).  When reviewing the denial of a directed verdict, the appellate court
 views the evidence and all reasonable inferences in the light most favorable to
 the state.  Id.  An appellate court may only reverse the trial court's
 denial of a directed verdict motion if there is no evidence to support the
 trial court's ruling.  State v. Gaster, 349 S.C. 545, 555, 564 S.E.2d
 87, 92 (2002).  If there is any direct evidence or any substantial
 circumstantial evidence reasonably tending to prove the guilt of the accused,
 this court must find the case was properly submitted to the jury.  Weston,
 367 S.C. at 292-93, 625 S.E.2d at 648.  
LAW/ANALYSIS
On appeal, Portee contends the appearance
 of a bulge did not represent a deadly weapon, and there was no corroborative
 evidence accompanying the threat to kill that would show there was a gun in
 existence, or a representation of a gun in existence, during the robbery.  He
 therefore contends there was insufficient evidence on the deadly weapon element
 such that he was entitled to a directed verdict on the armed robbery charge.   We
 disagree.
Section
 16-11-330(A) of the South Carolina Code provides in pertinent part as follows:  

 A
 person who commits robbery while armed with a pistol, dirk, slingshot, metal
 knuckles, razor, or other deadly weapon, or while alleging, either by action or
 words, he was armed while using a representation of a deadly weapon or any
 object which a person present during the commission of the robbery reasonably
 believed to be a deadly weapon, is guilty of a felony. . . .

S.C. Code Ann. § 16-11-330(A)
 (2003).  Under this section:

 [T]he
 State may prove armed robbery by establishing the commission of a robbery and
 either one of two additional elements:  (1) that the robber was armed with a
 deadly weapon or (2) that the robber alleged he was armed with a deadly weapon,
 either by action or words, while using a representation of a deadly weapon or
 any object which a person present during the commission of the robbery
 reasonably believed to be a deadly weapon.  

State v. Muldrow, 348 S.C. 264, 267-68, 559 S.E.2d 847, 849 (2002). 
 Under the first prong, the presence of a weapon may be inferred from
 circumstantial evidence.  Id. at 268, 559 S.E.2d at 849.  The display of a deadly weapon is not an essential element
 of the offense.  State v. Jones, 342 S.C. 248, 252, 536 S.E.2d 396, 398
 (Ct. App. 2000) (citing State v. Nix, 288 S.C. 492, 497 n.2, 343 S.E.2d
 627, 630 n.2 (Ct. App. 1986)).  However, words alone are not sufficient
 under either the first prong or the second prong of the statute, and a threat
 to kill one, in and of itself, is insufficient to establish the element of a
 deadly weapon.  Muldrow, 348 S.C. at 268-69, 559 S.E.2d at 849-50; State
 v. Dodd, 354 S.C. 13, 17-18, 579 S.E.2d 331, 333-34 (Ct. App. 2003).
It
 is the use or alleged use of a deadly weapon that distinguishes armed robbery
 from robbery.  State v. Moore, 374 S.C. 468, 477, 649 S.E.2d 84, 88 (Ct.
 App. 2007).  A defendant may be convicted of armed
 robbery under the statute if the jury concludes that the robber alleged that he
 was armed under the requisite circumstances without having to conclude that he
 was, in fact, so armed.  Jones, 342 S.C. at 253, 536 S.E.2d at 398.
We
 find there is sufficient evidence under both prongs of § 16-11-330(A) such that
 the trial judge properly denied Portee's motion for directed verdict.  While
 Portee is correct in asserting that words alone are insufficient to establish
 the element of a deadly weapon, there is evidence that Portee actually
 possessed a deadly weapon during the robbery, as well as evidence that Portee
 alleged, by action or words, he was armed "while using a representation of
 a deadly weapon or any object which a person present during the commission of
 the robbery reasonably believed to be a deadly weapon."  See §16-11-330(A).
Under
 the first prong, the display of a deadly weapon is
 not an essential element of the offense.  Jones, 342 S.C. at 252, 536
 S.E.2d at 398. Further, under this prong the presence of a weapon may
 be inferred from circumstantial evidence.  Muldrow, 348 S.C. at 268, 559
 S.E.2d at 849.  Here, the evidence shows that Portee
 threatened to kill the victims during the robbery and that the yellow
 raincoat identified by the victims as being worn by Portee, which he threw to
 the ground while running from the police, contained a utility knife, which
 constitutes a deadly weapon, in the right pocket.  Additionally, there is
 evidence Portee used a gun during the robbery, as the minister who ran after
 Portee following the incident inside the store stated the man pulled a pistol
 on him.  Because there is evidence Portee used a deadly weapon during his
 attempt to escape, there is evidence he committed armed robbery.  See State
 v. Mitchell, 382 S.C. 1, 5, 675 S.E.2d 435, 437-38 (2009) (holding, "when
 a defendant commits robbery without a deadly weapon, but becomes armed with a
 deadly weapon before asportation of the victim's property, a conviction for
 armed robbery will stand," for "the crime of robbery is not completed
 the moment the stolen property is in the possession of the robbers, but may be
 deemed to continue during their attempt to escape"); Moore, 374
 S.C. at 482-83, 649 S.E.2d at 91  (holding, when one commits a larceny and then
 displays a weapon so as to overcome the resistance of the witness, the crime is
 then elevated to armed robbery).  Accordingly, there is substantial
 circumstantial evidence Portee was actually armed at the time of the robbery.
Additionally,
 there is evidence Portee alleged he was armed with a deadly weapon, by his
 action or words, while using a representation of a deadly weapon or an object
 which the victims could have reasonably believed to be a deadly weapon.  Portee
 threatened to kill the victims.  Tracey testified, during this time, she
 noticed a bulge in the right pocket of the man's yellow jacket while he used
 one hand to hold her by her hair and he positioned the other hand into his
 clothes.  At that point, having been threatened, Tracey believed the man was
 armed.  This testimony was further corroborated by Joan, who testified she was
 not sure what type of weapon he had, but he walked Tracey up toward the
 register, using one hand to grab Tracey's hair and keeping the other hand
 inside his pants, "like he had something in his pants."  Further, the
 State presented evidence from an investigating officer that he believed the
 hacksaw handle recovered from Portee's car was used by Portee to resemble a
 firearm, that any person in fear would think the hacksaw handle was a firearm,
 and that the item inside a pocket of clothing would create a bulge.  Therefore,
 the State presented substantial circumstantial evidence Portee alleged he was
 armed with a deadly weapon while using a representation of a deadly weapon or
 an object which the victims could have reasonably believed to be a deadly
 weapon.
For the foregoing reasons, we find the
 trial judge properly denied Portee's motion for directed verdict on the armed
 robbery charge.  His convictions are therefore
AFFIRMED.      
FEW, C.J., and HUFF and GEATHERS, JJ., concur.  

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.